In re ESTATE OF Harold E. HAWK, Deceased; Margueritte Hudson; and Lois Owen, Appellees,

v.

Lorena A. LAIN, Appellant,

and Iowa Trust and Savings Bank, Defendant.

No. 67879.

Supreme Court of Iowa.

Feb. 16, 1983.

Dwight W. James and William A. Wickett of James & Galligan, P.C., Des Moines, for appellant.

Ronald L. Sutphin of Peddicord, Simpson & Sutphin, P.C., Des Moines, for appellees.

James G. Milani, Centerville, for defendant bank.

Considered by LeGRAND, P.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

The defendant, Lorena Lain, appeals from a declaratory judgment that she is not the child of the decedent, Harold E. Hawk. She argues that although she was born while her mother was married to another man, blood tests and other evidence successfully rebutted the presumption that she was the husband's child. She contends Hawk was her natural father, and she is entitled to inherit from him because (1) Hawk and her mother were married after her birth, legitimatizing her under Iowa Code section 595.18; and (2) she is entitled to inherit under Iowa Code section 633.222 even if she was not legitimatized because of Hawk's "general and notorious" recognition of her as his child. On our de novo review, Iowa Code section 633.33, we conclude the presumption of paternity by her mother's husband was rebutted, that Hawk's paternity was established, and that Lorena was legitimatized through Hawk's marriage to Lorena's mother. Accordingly, we reverse.

Harold E. Hawk died intestate in 1980. When his estate was opened, Nancy J. Hawk was shown as his surviving spouse, and three children were listed as heirs: Margueritte Hudson and Lois Owen, Hawk's daughters by a prior marriage, and Harold Hawk, Jr., the son of Hawk and Lorena's mother. Later, a supplemental probate inventory was filed amending the value of certain assets and adding the name of Lorena Lain as a daughter. Daughters Margueritte and Lois filed this petition for declaratory judgment to establish that Lor-

ena is not a child of the decedent and therefore ineligible to share in his estate.

### I. Presumption of Legitimacy.

■ At the time of Lorena's birth, her mother was married to Leslie Plants. Lorena's last name was Plants, and the evidence showed that, prior to Hawk's death, she had believed she was Plant's daughter. A child born in wedlock is presumed to be legitimate, although the presumption may be rebutted by "clear, strong and satisfactory" evidence. *In re Marriage of Schneckloth,* 320 N.W.2d 535, 536 (Iowa 1982); *Kuhns v. Olson,* 258 Iowa 1274, 1276, 141 N.W.2d 925, 926 (1966).

Lorena relies on testimony by her mother and the results of blood tests to show she could not have been the child of Leslie Plants. The trial court concluded the evidence fell short of rebutting the presumption, despite the blood test results which showed there was no possibility Plants could have been the father. The court further concluded that the testimony of Nancy Hawks, Lorena's mother, was "unpersuasive" and that the effect of evidence tending to show Plants was the father outweighed the blood test evidence. To reach any other conclusion, the plaintiffs now argue, would be tantamount to giving conclusive effect to the blood test.

In *Schneckloth,* we quoted from *Little v. Streater,* 452 U.S. 1, 6–7, 101 S.Ct. 2202, 2206, 68 L.Ed.2d 627, 633 (1981), in assessing the weight to be given to modern blood tests for paternity:

> As far as the accuracy, reliability, dependability—even infallibility—of the tests are concerned, there is no longer any controversy. The result of the test is universally accepted by distinguished scientific and medical authority. There is, in fact, no living authority of repute, medical or legal, who may be cited adversely.... [T]here is now ... practically universal and unanimous judicial willingness to give decisive and controlling evidentiary weight to a blood test exclusion of paternity.

(quoting from 1 S. Schatkin, Disputed Paternity Proceedings § 9.13 (1975)). We did not give the blood test conclusive effect in *Schneckloth,* holding only that under our de novo review the statutory presumption that the husband was the father of the child had been successfully rebutted.

■ Similarly, while we do not hold the blood tests are conclusive here, we believe that the tests, together with the other evidence, particularly the testimony of Lorena's mother, have rebutted the presumption of legitimacy. We conclude Lorena was not the daughter of Leslie Plants.

### II. Effect of Illegitimacy.

■ Showing she is not the daughter of Leslie Plants, of course, does not establish Lorena's right to inherit from Harold Hawk. She must establish (1) that she is the daughter of Harold Hawk and (2) either that she was openly and notoriously recognized by him as his daughter, Iowa Code section 633.222, or legitimatized by the marriage of Hawk and her mother. Iowa Code § 595.18.

■ A. *Evidence of Hawk's paternity.* A showing of paternity requires only a preponderance of the evidence. *Forman v. Wilcox,* 305 N.W.2d 703, 704 (Iowa 1981); *Brown v. Middleton,* 259 Iowa 1140, 1142, 147 N.W.2d 40, 41 (1966); *Kuhns,* 258 Iowa at 1276–77, 141 N.W.2d at 926–27; *Spears v. Veasley,* 239 Iowa 1185, 1186–87, 34 N.W.2d 185, 186 (1948). The blood grouping tests of the type showing nonpaternity of Leslie Plants are of no help in resolving this issue; no sample of Hawk's blood was available for analysis. We must look to other evidence on that question. While other evidence, including photographs, lend support to Lorena's claim, we believe the most compelling is the testimony of Lorena's mother that Hawk was the father.

While the trial court's findings are entitled to weight, *see Forman,* 305 N.W.2d at 704, especially since it had a better opportunity to weight the credibility of witnesses, we take a different view of the evidence. Nancy Hawk is obviously in the best position to know who the father of her child

was. It is true she had earlier demanded child support from Plants on the ground Lorena was his daughter, but the blood test showed that was not the case. And, while it is also true, there was speculation at the trial that other men had been seeing Nancy at the time Lorena was conceived, there was no evidence as to who they were, or the extent of their relationship with her.

Moreover, while the trial court found Nancy to be motivated by a "misguided sense of motherly protectiveness" in testifying to Hawk's paternity, we note that she stood to gain nothing financially from it, and in fact, acted against her own interests when she testified to this illicit relationship.

■ Upon examination of the whole record, we conclude that a preponderance of the evidence supports Lorena's claim that Harold Hawk was her father.

B. *The effect of the marriage.* Following Nancy's divorce from Plants, she moved in with Hawk, who was also divorced, and the two began a common-law marriage. No one disputes that the parties were legally married. *See In re Marriage of Winegard,* 278 N.W.2d 505, 510–11 (Iowa 1979) (recognizing common law marriages in Iowa).

Assuming, as we have found, that the presumption of legitimacy has been rebutted and Hawk's paternity is established, the issue presented is whether the common law marriage of Hawk and Nancy legitimatize Lorena under Iowa Code section 595.18, which provides:

> Illegitimate children become legitimate by the subsequent marriage of their parents. Children born of a marriage in violation of section[s] 595.3 [license provisions] or 595.19 [void marriages] are legitimate.

■ These plaintiffs contend, and the trial court held, that this section is inapplicable because it applies only to an illegitimate child, which Lorena was not, and only if Lorena proves Hawk was her father, which she failed to do. We have, of course, resolved those issues adversely to the plaintiffs. Lorena was legitimatized by the com-

mon law marriage, under section 595.18. Other courts addressing this issue under similar statutes agree. *See, e.g., In re Succession of Mitchell,* 323 So.2d 451 (La.1975); *Sacks v. Sacks,* 267 So.2d 73 (Fla.1972) (birth made legitimate by common law marriage), *Robinson v. Ruprecht,* 191 Ill. 424, 61 N.E. 631 (1901); Annot., Legitimation by Marriage to Natural Father, 80 A.L.R.3d 219 (1977).

We conclude that Lorena has established her right to share in the estate of Harold Hawk and accordingly reverse the trial court.

REVERSED.