STATE of Iowa, ex rel. Colleen Fenton HODGES, Petitioner-Appellee,

v.

Michael FITZPATRICK, Respondent-Appellant.

No. 2-68897.

Court of Appeals of Iowa.

Oct. 25, 1983.

Robert C. Nelson of Nelson & Nelson, Cedar Rapids, for respondent-appellant.

Thomas J. Miller, Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., for petitioner-appellee.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Respondent, Michael Fitzpatrick, appeals the trial court's determination of paternity and imposition of support obligation on him pursuant to Iowa Code chapter 252A (1979). On appeal respondent asserts that the trial court erred (1) by admitting into evidence, over his objections, the results of a blood test, and (2) in determining that the evidence was sufficient to support a finding of paternity. We affirm.

This action under chapter 252A is in equity and our review, therefore, is de novo. Iowa Code § 252A.6(1) (1979); *Moody v. Christiansen*, 306 N.W.2d 775, 777 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

I. Admissibility of the Blood Test Results. Admissibility of the blood test results turns on the construction of Iowa Code section 675.41 (1981). Section 675.41 became effective January 1, 1981. It provides:

> In any proceeding to establish paternity in law or in equity the court may on its own motion, and upon request of a party shall, require the child, mother, and alleged father to submit to blood tests. If a blood test is required, the court shall direct that inherited characteristics, including but not limited to blood types, be determined by appropriate testing procedures, and shall appoint an expert qualified as an examiner of genetic markers to analyze and interpret the results and to report to the court. Blood test results which show a statistical probability of paternity are admissible and shall be weighed along with other evidence of the alleged father's paternity. If the results of blood tests or the expert's analysis of inherited characteristics is disputed, the court, upon reasonable request of a party, shall order that an additional test be made by the same laboratory or an independent laboratory at the expense of the party requesting additional testing. Verified documentation of the chain of custody of the blood specimens is competent evidence to establish the chain of custody. A verified expert's report shall be admitted at trial unless a challenge to the testing procedures or the results of blood analysis has been made before trial. All costs shall be paid by the parties in proportions and at times determined by the court.

The present action was brought in 1981, but that statute is applicable to this action as a result of the supreme court's decision in *State ex rel. Buechler v. Vinsand*, 318 N.W.2d 208, 210 (Iowa 1982) (this statute establishing a rule of evidence is applicable to proceedings pending on the effective date of the enactment).

The blood tests were requested by petitioner pursuant to Iowa Rule of Civil Procedure 132 on August 26, 1980. The request was granted and blood was drawn and tested in July and August, 1981. Testing was done by Dr. Herbert F. Polesky, M.D., at the Minneapolis War Memorial Blood Bank. Dr. Polesky sent the Assistant County Attorney, the petitioner's representative in this action, a summary of the result of the tests which indicated a 99.636 percent likelihood of respondent being the father of the child in a letter dated August 26, 1981. Respondent's attorney also received a copy of the report. The unverified report sent to the Assistant County Attorney was filed with the trial court on October 2, 1981. An affidavit was executed by the medical technologist as to the collection and mailing of the blood specimens on May

14, 1982. An affidavit was also executed by Dr. Polesky on May 3, 1982, as to the testing procedures and was attached to the original blood test report of August 26, 1981. Both affidavits were introduced by petitioner at trial as exhibits. The trial was held on May 20, 1982.

Respondent did not challenge the testing procedures or the results of the blood analysis prior to trial. He did file objections to the blood tests prior to trial on the ground that the petitioner failed to follow the procedures set out in section 675.41. It was upon this basis that he challenged the admissibility of the blood tests at trial, and he continues to urge that ground upon appeal.

Specifically, respondent alleges the blood tests were inadmissible pursuant to Iowa Code section 675.41 (1981), because the expert failed to file with the court a verified report of his findings. Respondent argues that the language in that section that provides "the court ... shall appoint an expert qualified as an examiner of genetic markers to analyze and interpret the results and *to report to the court*," requires the expert to file a verified copy directly with the court. The respondent argues that because this statute creates an exception to the hearsay rule and because of the crucial nature of blood tests to this type of action, the terms of the statute must be literally complied with before blood tests are admissible under its provisions. *See Phillips By and Through Utah State Department of Social Services v. Jackson*, 615 P.2d 1228, 1236–38 (Utah 1980) (foundation requirements for blood tests in paternity action in absence of special statutory provisions).

Petitioner, on the other hand, asserts that the blood test report is admissible under the provision in section 675.41 that provides: "A verified expert's *report shall be admitted at trial* unless a challenge to the testing procedures or results of blood analysis has been made before trial." Iowa Code § 675.41 (1981) (emphasis added). The petitioner argues that either of the parties may introduce a verified report of the blood test results at trial without a verified report having been previously filed directly with the court by the examining expert.

■ Iowa Code section 675.41 establishes a rule of evidence and is remedial or procedural rather than substantive. *State ex rel. Buechler v. Vinsand*, 318 N.W.2d at 210. "As a general rule, statutes relating to remedies and procedure are to be construed liberally with a view to the effective administration of justice and to reducing the labor and expense of litigants." 82 C.J.S. *Statutes* § 395 (1953). This rule is subject, however, to the principle that all rules of statutory construction are merely for the purpose of ascertaining legislative intent. *Bergeson v. Pesch*, 254 Iowa 223, 228, 117 N.W.2d 431, 434 (1962). It does not authorize us to change the reasonable meaning of the language of the statute. *Id.* at 228, 117 N.W.2d at 434.

■ It is undisputed that courts usually find results of blood tests that show nonpaternity either to be conclusive or highly persuasive on the issue of paternity. *In re Marriage of Schneckloth*, 320 N.W.2d 535, 538 (Iowa 1982). This type of evidence is also highly persuasive in a paternity proceeding where the results show a high degree of probability that a paternity defendant is the putative father. While it is clear the legislature intended to ease the burden on paternity litigants, we believe the procedures established in the statute must be adhered to in order for the blood test results to be admissible at trial. The statute requires the *experts* to "report to the court" the results of the examination. The examining expert is required to make his report directly to the court rather than sending it to one of the parties. Both the unverified report of August 26, 1981, and the affidavit executed on May 3, 1982, and attached to the report were sent to the county attorney rather than the court. The report, therefore, was inadmissible and should have been excluded.

■ Petitioner also asserts, however, that this objection was waived because the defendant did not raise the objection prior to trial. The supreme court, in *State ex*

*rel. Buechler v. Vinsand,* 318 N.W.2d at 210, held that the failure to make a pretrial objection precluded both objections to the testing procedures or the results to blood analysis and objections on "any other ground to admissibility of the results." Defendant did file a pretrial objection in this case as to the admissibility of the blood tests albeit the objections were filed only the day before trial. There was nothing in the record to indicate that this objection was not timely. Under these facts, we believe that defendant did not waive his objection as to the admissibility of the blood test reports under Iowa Code section 675.41. Because we have found that the blood test reports were not, in fact, admissible under section 675.41, we hold that the results of the test should not have been considered in determining paternity.

II. The Merits of the Case. The petitioner contends that the evidence was sufficient to establish paternity even excluding the blood test results. We agree.

In according **de novo** review, this court disregards evidence to which meritorious objection was made and considers all admissible evidence. *In re Marriage of Schneckloth,* 320 N.W.2d at 536. We do not consider the blood test results in making our determination. Petitioner has the burden of establishing paternity by a preponderance of the evidence. *Moody v. Christiansen,* 306 N.W.2d at 777.

The child was born November 16, 1974, after a full term pregnancy. Petitioner testified that she had sexual relations with no one else in the months of January, February, and March of 1974. Petitioner's last full menstrual cycle was in the month of January, although she had partial periods in February, March, and April. Petitioner met the defendant in the fall of 1973 and defendant admitted having sexual relations with petitioner prior to Christmas of 1973. Other witnesses on behalf of the respondent claimed to have had sexual relations with petitioner in January, February, and March of 1974. They stated upon cross-examination, however, that they were "not absolutely positive,"

"believed" that they did or were "reasonably sure." Respondent never made any admission he was the father, although petitioner testified that when she first told him of her pregnancy he was "happy about it" and later told her that he was "too young to be a father." Petitioner admitted having sexual relations with other males during 1973, but denied having sexual relations with them during the critical time period.

We find, upon our **de novo** review, sufficient evidence to support the finding of paternity.

AFFIRMED.

All Judges concur except OXBERGER, C.J., who specially concurs.

SACKETT, J., takes no part.

OXBERGER, Chief Judge, (concurring specially).

I concur in the result reached by the majority, but I would hold that the filing of the report with the court complies with the statutory requirement that the expert "report to the court."