**In re the MARRIAGE OF Susan D. DETERT and Ned D. Detert.**

**Upon the Petition of Susan D. Detert, Petitioner-Appellee/Cross-Appellant, and concerning Ned D. Detert, Respondent-Appellant/Cross-Appellee.**

**No. 85–284.**

Court of Appeals of Iowa.

June 4, 1986.

Monty R. Bertelli, Cedar Rapids, for respondent-appellant/cross-appellee.

Allan L. Harms of Eells, Blackstock, Affeldt & Harms, Cedar Rapids, for petitioner-appellee/cross-appellant.

Heard by DONIELSON, P.J., and SNELL and SCHLEGEL, JJ., but considered en banc.

DONIELSON, Presiding Judge.

Respondent, Ned Detert, appeals from the district court's denial of his application to modify the decree annulling the parties' marriage. The husband contends the district court erred: (1) in concluding he was barred by the doctrine of res judicata from introducing evidence of nonpaternity in support of his application for modification of the annulment decree; (2) in concluding the paternity exclusion established by a blood test not available at the time of the annulment did not constitute a substantial change in circumstances pursuant to Iowa Code section 598.21(8); and (3) in not admitting the results of the blood test into evidence on the ground a proper foundation had been established. The respondent contends the absolute exclusion of paternity is a proper circumstance whereby the court through its inherent power in equity may modify a judgment for child support.

Petitioner, Susan Detert, cross-appeals that the trial court erred: (1) in not granting her a cost of living adjustment and increased child support on the ground her economic situation had deteriorated significantly; and (2) in failing to award her attorneys fees. She also asks for attorneys fees for this appeal.

The parties were married August 6, 1976, and separated in April, 1977. On February 18, 1980, the wife filed for an annulment of the marriage, alleging the marriage was illegal because she had a husband at the time of the marriage. One child was born during the term of the marriage on January 4, 1978, when the parties were not living together. While the annulment proceedings were pending, the husband contended he was not the child's father. Blood testing and analysis did not exclude the paternity of the husband.

The husband, therefore, entered into a stipulation on December 10, 1980, which provided, in relevant part, that:

The Petitioner and the Respondent in the above entitled proceedings state that in the event a Decree of Annulment or Marriage is granted herein, the Petitioner and the Respondent do hereby stipulate and agree that the property rights, alimony, child support and custodial rights of the parties shall be settled, subject to the approval of the Court, as follows:

1. *Child Support.* The Petitioner shall be granted the care, custody and control of the minor child of the parties, Russell Wayne Detert, age two years, born January 4, 1978, subject to the visitation rights of the Respondent as herein below set forth.

2. *Visitation Rights.* The Respondent shall be given visitation with the above named minor child of the parties with the Petitioner present at all times as the parties can reasonably agree upon after giving reasonable notice to the Petitioner.

3. *Child Support.* The respondent shall pay to the Petitioner for support of the minor child of the parties the sum of Twenty Dollars ($20.00) per week, commencing on the Friday of the week in which the Decree of Dissolution of Marriage is entered in this case. Said payments shall be made by the Respondent to the Friend of Court of Linn County, Iowa. Said child support payments shall continue until said child becomes eighteen years of age, or graduates from high school, whichever occurs last, or until said child becomes emancipated, married or deceased.

Said child support shall increase to the sum of Thirty Dollars ($30.00) per week effective on the first Friday following January 4, 1983, and shall continue thereafter at said rate.

Any defaults by the Respondent in his child support obligation ordered by the Court on April 2, 1980, shall remain in full force and effect as a judgment for child support.

\* \* \* \* \* \*

10. *Entire Agreement.* The parties further agree that this Stipulation sets forth the entire agreement between the parties, and there being no other understanding between them, express or implied, and that conciliation procedures have been previously waived, and the

parties acknowledge that they would have been of no useful purpose or value, and would not have reconciled the parties; the parties further stipulate and agree that the Court take appropriate jurisdiction of the Petitioner's Petition, approve this Stipulation, and by Order bind them to the terms hereof and dissolve the marriage between the Petitioner and the Respondent.

\* \* \* \* \* \*

12. *Miscellaneous Clauses.* Except as otherwise expressly provided, the parties shall and do hereby remise, release and forever discharge each other from any and all obligations, suits, debts, claims and demands and obligations whatsoever, both in law and in equity, which either of them ever had, now has, or may hereafter have against the other upon or by reason of any matter, cause or things up to the date of the execution of this instrument.

The parties respectfully acknowledge that each has had independent legal advice by legal counsel of his or her own selection and each fully understands the facts and has been fully informed as to his or her legal rights and obligations, and having had such advice, and with such knowledge, each of them is signing this Stipulation freely and voluntarily.

The stipulation was incorporated into the final decree of annulment which was granted on December 11, 1980.

Approximately three years later the husband learned of new blood grouping tests which could provide at least a 97% chance of establishing nonpaternity. On September 26, 1983, the husband filed an application to modify the annulment decree to reduce the child support to zero, based on nonpaternity. Respondent's subsequent application for an order for additional blood testing was granted by the court. The wife had resisted on the theory of res judicata. She included a counterclaim for increased support and a cost of living adjustment which was resisted by the husband.

The blood test samples were taken by Weiland Laboratories of Cedar Rapids, Iowa and sent to War Memorial Blood Bank of Minneapolis, Minnesota for testing. The results of the testing and analysis excluded the husband as father of the child.

At hearing, the husband presented evidence to the court of the testing procedure, the test conducted, the conclusion of nonpaternity as to the husband being the father and the understanding of the husband as to the issue of paternity at the time of signing the stipulation. The wife sought to establish that the issue of paternity had already been determined in the stipulation. She also presented evidence of an increase in her utility rates.

The court ruled that improved technology leading to better evidence of nonpaternity was not changed circumstances within the meaning of Iowa Code section 598.-21(8). It ruled the new test was actually newly discovered evidence pursuant to Iowa Rule of Civil Procedure 252, but such evidence was barred by one year time limitation in rule 253.

The court ruled the annulment decree was a final adjudication of the issue of paternity between the parties, and that principles of res judicata barred further litigation.

It ruled that the totality of circumstances including the husband's limited financial resources necessitated a denial of the request for increased child support. The request for attorneys fees was also denied.

## I.

■ The initial issue is whether the issue of paternity was litigated and adjudicated in the prior proceeding so as to satisfy res judicata.

Res judicata requires:

(1) The issue concluded must be identical.

(2) The issue must have been raised and litigated in the prior action.

(3) The issue must have been material and relevant to the disposition of the prior action, and

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*In the Matter of Evans,* 267 N.W.2d 48, 51 (Iowa 1978).

■■■ The parties have no quarrel with the law, but rather whether the law is being properly applied to these facts. The alleged father contends that the stipulation he entered into which provided the mother be granted custody of the "minor child of the parties" and he would pay "for the support of the minor child of the parties" did not result in an admission of paternity. Thus, according to the alleged father, the paternity issue was never expressly determined. We disagree. Although neither the stipulation or the decree expressly states that Ned is the father of Russell Wayne Detert, a fair reading of the order indicates that the paternity issue was raised, litigated, and determined even though the issue of paternity was addressed by the court through the stipulation. The issue was expressly raised by the alleged father in paragraph 3 of his application for reconsideration of the order of temporary support dated June 11, 1980. The issue of paternity was also litigated because a blood test was conducted. Even though the alleged father contested paternity and the inconclusive blood result may have induced him not to further contest this issue due to the legal presumption that a child born during a marriage is presumed to be the child of the parties, he was represented by counsel and did enter into such a stipulation. The alleged father's actions caused the stipulation to have preclusive effect. We also find the stipulation in paragraph one of such application identifies Russell Wayne Detert as the minor child and subsequently only refers to the minor child, which sufficiently identifies who the parties were referring to in the stipulation. Had the alleged father not stipulated to paying child support, our result may have been different. We have no reason to believe, however, the trial court did not decide this issue unfavorably towards the alleged father.

An Iowa court addressed a modification of a paternity application in *Evans.* In *Evans,* the alleged father defaulted in a dissolution proceeding and was ordered to pay child support. When the alleged father failed to pay such support in his defense to a contempt action, he claimed he was not the child's father. A stipulation was entered that he was *not* the father by both parties. This was given preclusive effect by the court because the issue of paternity was not expressly determined in the default action. *Evans* indicates that a default in dissolution proceeding where child support is ordered does not trigger res judicata in a subsequent nonpaternity claim because the issue of paternity was not raised, litigated, or decided in the original proceeding. 267 N.W.2d at 51. *See also* Annot., "Paternity Findings as Res Judicata," 78 A.L.R.3d 846, 851. We find this issue of paternity in this case, however, was raised, litigated, and decided by the court.

We believe our decision is in accord with decisions from other jurisdictions. In *DeWeese v. Unick,* 102 Cal.App.3d 100, 162 Cal.Rptr. 259 (1980), a paternity suit was filed in which the alleged father stipulated he was the father in the original proceeding. A new blood test (human leucocyte antigen—HLA) was developed after the original proceeding which indicated Unick was not the father. Because of the stipulation, the California court applied res judicata. *See also Peercy v. Peercy,* 154 Colo. 575, 392 P.2d 609 (1964); *Nostrand v. Olivieri,* 427 So.2d 374 (Fla.Dist.Ct.App.1983); *Johnson v. Johnson,* 395 So.2d 640 (Fla. Dist.Ct.App.1981); *Arnold v. Arnold,* 207 Okla. 352, 249 P.2d 734 (1952); *but see Hansom v. Hansom,* 75 Misc.2d 3, 346 N.Y.S.2d 996 (Fam. Ct. Richmond Cty.1973) (Results of blood tests admitted in child support action as newly discovered evidence because court had continuing jurisdiction where alleged father previously admitted he was the father.).

## II.

■■■ The alleged father also claims that the results of the blood tests constituted a

substantial change of circumstances under Iowa Code § 598.21(8) justifying modification of the child support order.

The trial court found the results of the blood test provided by improved technology. should be characterized as newly discovered evidence under Iowa R.Civ.P. 252(f) and not as changed circumstances under § 598.-21(8). We concur with the trial court.

In *Sorenson v. Sorenson*, 254 Iowa 817, 119 N.W.2d 129 (1963), the court rejected the alleged father's attempt to relitigate the paternity issue in a modification proceeding on the ground of a change in circumstances. The court went on to find his claim was actually based on fraud under Rule 252(b), but the action was barred under Rule 253 because it was not brought within one year of judgment. Iowa at 824–25, 119 N.W.2d at 133–34. Similarly, the alleged father's claims are newly discovered evidence because the child's blood type has not changed since the original proceeding. The change was in technology which is not cognizable as a change in circumstances under section 598.21(8). Further, this evidence is barred because it was not brought within one year of the judgment.

Because of our disposition of the blood type evidence, we do not need to address the chain of custody argument raised in the briefs.

### III.

The mother cross-appeals seeking an increase in child support due to the increased cost of living, primarily increased heating costs. After considering *Keyser v. Keyser*, 193 Iowa 16, 186 N.W. 438 (1922) and other relevant authority, we decline to modify the child support award. We also find no merit in the mother's claim for attorney fees under Iowa Code § 598.36 (1985). We, therefore, affirm the trial court and deny the cross-appeal. **APPEAL AFFIRMED; CROSS–APPEAL DENIED.**

All Judges concur, except SNELL and SACKETT, JJ., who dissent.

SNELL, Judge (dissenting).

Where hath truth gone? To the majority, the question is irrelevant, the search passe. Res judicata has blocked the road. It matters not that an innocent man is convicted of an uncommitted act. An artificial rule of law, misapplied, grinds truth to dust.

This is a modification of child support case. The court may modify child support orders when there is a substantial change of circumstances. Iowa Code § 598.21(8) (1985). The majority concludes there is no change of circumstances here because the child's blood type has not changed, only an improved technology has changed the result of the paternity question. This is like saying there is no change of circumstances from life to death because the blood type has not changed. But only a theologian might deign to argue that proposition. The law and the tax collector certainly recognize that a substantial change has occurred.

There is a substantial change of circumstances in this case. It is from an assumption of paternity because it could not be conclusively disproved to a scientifically certain conclusion of nonpaternity. How much more substantial a change of circumstances could there be?

The majority, however, decides that we need not bother with such disquieting evidence because the doctrine of res judicata has barricaded the door to further inquiry. This is so because the paternity issue has been settled by appellant's stipulation to pay child support. It finds this from the language of the stipulation referring to "minor child of the parties." From this, is extracted that "a fair reading of the order indicates the paternity issue was raised, litigated and determined." This is supposed to satisfy the second requirement of the res judicata doctrine.

There is no support for the conclusion that the paternity issue was litigated and determined. A fair reading of the record shows that the issue was obviated. When appellant could not conclusively disprove

paternity, he agreed to pay child support, an honorable act. But that act does not prove paternity by adjudicated fact any more than by scientific test. Issue preclusion has no application here. *Compare Matter of Evans*, 267 N.W.2d 48, 51 (Iowa 1978).

The claim of fairness in the majority opinion is in its reference to the dissolution order. Certainly, there is nothing fair about making a man pay child support for thirteen years to support a child conclusively not his. Little comfort for this result is garnered from the mother's past. Her first child was born before she was married. Later, she lost in two attempts to prove that her second child was fathered by her first husband. Now she is succeeding in pinning fatherhood on appellant through a misapplication of law. Truth is vanquished.

In law, appellant is the father, but in truth he is not. Of course, res judicata is not based on truth. It is not meant to be. It is an artificial rule of law, judge made, for a laudable purpose. It provides finality to a question when for many reasons that is the preferred result. *See* 46 Am.Jur.2d *Judgments* §§ 394, 395 at 558–61. But finality on the question of child support is not required, nor is it preferred. Just the opposite is the case. The legislative directive of section 598.21(8) makes it an ongoing issue to be considered by the court when petitioned by a party to do so. A modification hearing thus has for its purpose a determination of the truth as to what parental support for a child is proper at that time. The doctrine of res judicata properly applied correlates with the statute. It was not meant to be, however, nor should it be applied, as here, to subvert the truth. The majority has misapplied the law, ignoring a sense of justice along the way.

I would reduce the child support to $0 for the reason appellant is not the father.

SACKETT, J., joins this dissent.