ANDERSON, Justice,
for the Court:
This is an appeal from the County Court of Rankin County wherein the County Judge, sitting without a jury, dismissed Sorinthia Varnell’s complaint to determine paternity and for child support.
On January 14, 1985, plaintiff Sorinthia Varnell, a minor child, filed a complaint by her mother and next friend, Sonya Varnell, alleging that the defendant Ermon Green, Jr., was her natural father, and asking the court to enter an order of filiation and to require him to pay child support. Green answered with general denials. Both parties waived the right to a jury trial, and the cause was heard in a bench proceeding. After the evidence was heard, the trial judge announced his finding that it was physically impossible for Sonya Varnell to have become pregnant on the date she claimed, and that therefore she had failed to sustain the burden of proof. Her action was accordingly dismissed. As one might expect, the most important evidence was that of the child’s mother, Sonya Varnell. She testified that she had had intercourse with Green twice, and that she was quite certain the child was conceived on December 31, 1982. She also said that her last period before intercourse had ended in the first week of December.
In his opinion, the county judge focused on this testimony. It was his view that:
On cross examination, the plaintiff indicated it would be impossible for the defendant to be the father of the child. She was emphatic that the latter part of November to the last part of the first week in December of 1982 she was on a menstrual cycle at that time; it was during a basketball tournament. She had specific recall ability about that and was emphatic that the conceiving of this child had to have been on December 31, 1982, and could not have been the January 6, 1983, incident and this Court, as did Mr. McLaurin, and the complainant herself readily recognized immediately that it was an impossibility for her to have conceived that child on the date and time within which she has indicated.... It's a medical impossibility for her to have been impregnated on December 31, 1982....
It seems obvious that, without saying so, the court took judicial notice of certain *904 facts and theories about the human female menstrual cycle and made them the basis of his decision.
The general rule is that courts may take judicial notice of well-known medical and other scientific facts relating to human life to the extent that they are commonly known. 31A C.J.S. Evidence § 79. Mississippi follows this rule but it also follows the corollary that if any doubt exists as to whether a matter is a fact of general knowledge, it should be resolved in the negative. 31 C.J.S. Evidence § 9; Luckett v. Louisiana Oil Corp., 171 Miss. 570, 575, 158 So. 199, 200 (1934); see also Eidt v. City of Natchez, 421 So.2d 1225, 1230 (Miss.1982).
We found no case in which a court took judicial notice of the relation between the dates of a woman’s menstrual cycle and her fertility. The few courts that have squarely confronted the issue have declined to take notice. Harris v. State, 28 Ala.App. 23, 177 So. 311, 312 (1937); Hassler v. District of Columbia, 122 A.2d 827, 830-31 (D.C.1956); Lambert v. Dally, 30 Ohio App. 36, 281 N.E.2d 857, 860 (Ohio App. 1972). The cases cited by the appellee's brief deal not with menstrual cycles as such but rather with the different question of the length of the gestation period.
Linda W.W. v. William XX, 69 A.D.2d 918, 415 N.Y.S.2d 275, 276 (1979) was not a judicial notice case, but there, the court relied on expert testimony to the effect that 95 to 98% of women ovulate from 9 to 15 days after their period begins. The witness said there was a margin of error of five days. The Encyclopedia Britannica’s treatment of the subject is noteworthy for the carefulness with which the assertions are hedged with qualifications.
Ovulation occurs at about the mid-point of each normal cycle, and the ovum is probably capable of fertilization for only about two days after this.... [T]he date of ovulation may vary unexpectedly even in women whose menstrual cycles were previously regular. (Emphasis added) 26 Ene. Britannica 703, Reproduction and Reproductive Systems, 15th ed. 1987.
This hardly seems to reflect the degree of certitude necessary for judicial notice.
The appellee retorts that Sonya VarneH’s outburst on the stand (“What you’re trying to say is that there is no way he could have gotten me pregnant.”) indicated that she herself had enough knowledge of the facts of ovulation to recognize that it was impossible for Ermon Green to have impregnated her on December 81. It proves nothing of the sort. Even if Sonya had known absolutely nothing about the facts of ovulation, she was bound to have realized that the defense attorney would try to prove somehow that any conception on that date was impossible.
Finally, it should be remembered that during cross examination Sonya described her period as “sorta weird.” This would support an inference that her period was irregular.
All in all, the testimony seems to establish nothing more than a probability that Sonya was not fertile on December 81. Mere probability, even of a very high degree, does not justify the court in taking judicial notice. 31 C.J.S. Evidence § 9.
The record does not reflect that the defendant asked the court to take judicial notice of the facts surrounding human ovulation. Nor did the court indicate that it proposed to do that until it rendered its opinion. In one of Mississippi's leading cases on judicial notice, we stated:
Fairness and due process require that whenever the court at trial level is contemplating taking judicial notice of a fact or facts as a basis for calculations and fact findings, notice must be afforded to the party or parties who will be affected by the taking of such notice. Eidt v. City of Natchez, 421 So.2d 1225, 1231 (Miss.1982).
Cf. Britton and Koontz First National Bank v. Biglane, 285 So.2d 181 (Miss.1973); Game & Fish Commission v. Marlar, 206 So.2d 628 (Miss.1968).
This position is in accord with the general rule that:
Matter which it is claimed the court should judicially notice should be called to its attention by the party seeking to *905 take advantage of the matter, so that if there are grounds on which it may be contradicted or explained the adverse party may be afforded an opportunity to do so.
31 C.J.S. Evidence § 13(c)
In Eidt, the Natchez Public Service Commission based its dismissal of the plaintiff on certain statistics about the average wage and level of unemployment in Adams County. Although there could be no reasonable dispute about the accuracy of the figures, which were readily available in several standard sources, it was not placed into the record until after the hearing was concluded and therefore this Court held it “was erroneously considered as the basis of the commission’s order”. 421 So.2d at 1233.
The present case is remarkably similar. Assuming, for the sake of the argument, that the data concerning human ovulation and the menstrual cycle were facts of the type a court could normally consider under judicial notice, it remains true that plaintiff had no opportunity to explain why they should not be decisive in this particular case. She did not even know the judge was considering such data until after his decision was a fait accompli. It was obviously improper for the trial judge to make this date the basis of his opinion without giving the plaintiff such an opportunity. The case must be remanded for a new trial.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.