**STATE of Iowa, ex rel. Carol Ann WEGMAN, Petitioner–Appellee,**

v.

**Terry SCHULZ, Respondent–Appellant.**

No. 87–210.

Court of Appeals of Iowa.

Oct. 28, 1987.

John W. Gailey, Fort Dodge, for respondent-appellant.

Thomas J. Miller, Atty. Gen., and Robert R. Huibregtse, Asst. Atty. Gen., for petitioner-appellee.

Considered by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

In this paternity action respondent-appellant challenges (1) an order for blood testing, (2) a finding of paternity, and (3) an order for support. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

A petition was filed in Webster County in which Carol Ann Wegman and the State sought to establish that Respondent Terry Schulz is the father of Carol's male child born October 6, 1981. The matter was tried as a chapter 252A action to the court.

The factual history which evolved at trial is simple and without much dispute. Carol and Terry admitted they had intercourse sometime during the evening hours of January 21 or the early morning hours of January 22, 1981. Terry was not certain whether he ejaculated during the act of intercourse. The January 21–22 intercourse is the only act of intercourse Carol claims could have resulted in her pregnancy. Terry left the area shortly after January 22. Carol testified she did not have intercourse with anyone else during the time period relevant to this appeal.

Carol testified her menstrual period ended the day before they had intercourse. Terry testified Carol was still experiencing her menstrual period when they had intercourse. He contended he had difficulty the next day explaining the blood on his underwear to his wife. Carol testified she knew she was pregnant the next morning. She testified she told her employer two weeks later and was fired. Carol had had no other pregnancies. Carol testified she went to the doctor on March 10. She was advised she was seven weeks pregnant. The child was born October 6, 1981. He weighed six pounds one ounce and was twenty-one inches long. Carol had been given a due date of October 13. She was told she could have the baby two weeks before or two weeks after the due date.

After the trial was concluded on November 5, and without notice to either party, the trial court filed on November 7, 1986, an order for blood tests. It ordered the parties and child to appear "at 9 a.m. ... before November 18, 1986," at Trinity Regional Hospital in Fort Dodge for the purpose of having blood drawn. An affidavit dated November 18, 1986, was filed by Arlene Hawkins, employee of the child support recovery unit, stating Carol and her male child provided the ordered samples. The affidavit stated Hawkins was present at the laboratory one and one-half hours past the court-appointed time and respondent did not appear.

On December 29, 1986, the trial court filed an order and judgment reciting that counsel for respondent had advised the court respondent had returned to Texas and would not submit to a blood test as ordered. The court then determined respondent to be the biological father for the following reasons:

1. Petitioner had sexual relations with no one else 30 days prior to or after the time with Respondent;

2. Petitioner's last full menstrual cycle was in the month of January, 1981;

3. Respondent had sex with Petitioner on or about January 21, 1981; and

4. Petitioner has satisfied the required burden of proof.

Terry appeals challenging the trial court's order for a blood test, finding of paternity, and the amount of support.

This has been treated as a 252A action. Paternity is a proper issue in a proceeding under chapter 252A. *Stearns v. Kean*, 303 N.W.2d 408, 412 (Iowa 1981); *State ex rel. Brecht v. Brecht*, 255 N.W.2d 342, 344 (Iowa 1977); *Greenstreet v. Clark*, 239 N.W.2d 143, 147 (Iowa 1976). An action

under chapter 252A is in equity. Iowa Code § 252A.6(1). *See Brecht*, 255 N.W.2d at 344; *State ex rel. Hodges v. Fitzpatrick*, 342 N.W.2d 870, 872 (Iowa App.1983).

Our review is de novo. *Moody v. Christiansen*, 306 N.W.2d 775, 777 (Iowa 1981); *Brecht*, 255 N.W.2d at 344; *Hodges*, 342 N.W.2d at 872.

## I.

Defendant contends the trial court abused its discretion in ordering blood tests. He contends he was prejudiced by his inability to respond to the test ordered. He argues because the evidence was closed and neither party asked for the blood test, the trial court was ruling on a nonexistent motion to which respondent did not have the opportunity to respond. He further argues he should have had an opportunity to respond and offer evidence pertaining to the order.

We disagree with Terry's contention the trial court does not have the authority on its own motion to order a blood test. The authority of the trial court to order a blood test on its own motion is clearly given by section 675.41 which provides:

> In any proceeding to establish paternity in law or in equity the court *may on its own motion*, and upon request of a party shall, require the child, mother and alleged father to submit to blood tests.

(Emphasis added.) We do, however, agree with Terry that the order should not have been made by the trial court and ruled on without providing both parties an opportunity to respond.

The order provided in part:

A. *Samples:* Parties Carol Ann Wegman, Terry Schulz, and Justin Patrick Wegman shall present themselves at 9:00 a.m., at the laboratory, Trinity Regional Hospital, Fort Dodge, Iowa, before November 18, 1986, for the purpose of having blood samples drawn.

\*   \*   \*   \*   \*   \*

C. *Analysis:* The blood samples shall be forwarded to Dr. Herbert F. Polesky of the War Memorial Blood Bank for comprehensive genetic testing, by appropriate procedures, of inherited characteristics, including but not limited to blood types, and for proper analysis and interpretation of the results of the testing.

D. *Report:* Dr. Polesky shall prepare a verified report of his expert analysis and interpretation of the results and forwarded to this Court before December 8, 1986.

Terry had no opportunity to respond to the manner and method of taking the test. He was a resident of Texas. He argues the location of the test and the timeframe set by the trial court for his test were not possible. When a party is ordered to submit to a blood test, reasonable opportunity should be given to enable him or her to submit to the test. Had the trial court given Terry an opportunity to respond to its order, the difficulty of Terry's return to Iowa for testing could have been addressed.

Additionally, the order is objectionable because Iowa Code section 675.41 provides the test be accepted in evidence only with verified documentation of the chain of custody. To the extent section 675.41 affects the admissibility of blood test results, it does not create or divest a substantive right but merely establishes a rule of evidence. *State ex rel. Buechler v. Vinsand*, 318 N.W.2d 208, 210 (Iowa 1982).

Terry has now had the opportunity to respond by way of appellate brief, and after our having reviewed the record we determine the trial court's decision to order blood testing to be a proper one. A correct determination of paternity is important to society to assure that fathers as well as mothers will contribute to the financial upbringing of their children. Additionally, because a finding of paternity results in the establishment of legal rights, *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972), as well as responsibilities between father and child, it is important a correct determination of paternity be made. No less important is society's obligation to protect men

who are falsely accused of having fathered a child.

Courts usually find results of blood tests either to be conclusive or highly persuasive on the issue of paternity. *See In re Marriage of Schneckloth*, 320 N.W.2d 535, 538 (Iowa 1982); *Hodges*, 342 N.W.2d at 873. With the recent progress in medical science many more types of blood tests are available for paternity cases. With the larger variety of tests and the greater chance of exclusion by the use of all the currently available blood tests, the theoretical chance of exclusion can be as high as 99 percent. Lee, *Current Status of Paternity Testing*, 9 Fam.L.Q. 615, 615 (1975). However, it is unrealistic to conduct all the tests because it is unnecessary in many cases and is too costly. *Id.* There is strong support for medical evidence to play a cardinal role in paternity disputes. *See Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam.L.Q. 247 (1976).

The facts of this case, an alleged single act of intercourse by noncohabiting persons, make the issue of testing particularly important. We reject Terry's argument the trial court erred in ordering the testing after each party had concluded its evidence. While the testing process is increasingly able to provide reliable evidence of paternity that has not heretofore been available, *see* Iowa Code chapter 675, the test should be utilized for what it is: a form of evidence to be considered when properly admitted with other evidence to determine the issue of paternity.

We affirm that portion of the trial court's order that blood testing take place. We reverse the balance of the order, including the support award, and remand to the trial court for a hearing to determine the qualified expert to interpret the results and the time and place of taking the tests. The trial court, mindful of the importance of an accurate determination of paternity, should take into consideration the attendant circumstances in fixing a reasonable time and place for the blood testing. The parties are entitled to adequate notice of the trial court's amended order for blood testing.

Before the trial court receives the tests, either party shall have the right to challenge the testing procedure or the results, and if the tests are disputed either party may request additional tests be made at their expense in accordance with the dictates of the statute. *See* Iowa Code § 675.41.

## II.

Terry next challenges the evidence supporting the finding of paternity. Petitioner has the burden of establishing evidence by a preponderance of the evidence. *Moody*, 306 N.W.2d at 777; *Hodges*, 342 N.W.2d at 874.

■ The evidence is Carol conceived during or within a day of her menstrual period. Terry contends we should take judicial notice of the fact a woman is sterile at that portion of the menstrual cycle. *See generally Taber's Medical Dictionary* C–101 (13th Ed. 1977), ("Until ovulation occurs the female is sterile. In general, ovulation occurs about 12 to 14 days prior to the beginning of the next menstrual period.").

We take judicial notice of the ordinary period of gestation. *Moody*, 306 N.W.2d at 777; *State ex rel. Brown v. Middleton*, 259 Iowa 1140, 1142, 147 N.W.2d 40, 41 (1966) (court determined conception of full-term baby born August 29, 1964 occurred in late November 1963). We also recognize the gestation period is subject to many exceptions, *Spears v. Veasley*, 239 Iowa 1185, 1187, 34 N.W.2d 185, 186 (1948), and neither the mean nor the extremes of such period is so commonly and precisely known as to permit judicial notice of them. *Id.;* 31A C.J.S. *Evidence* § 79, at 88 (1964). While judicial notice may be taken of well-known facts relating to human life, *see* 31A C.J.S. *Evidence* § 79, at 78, we do not determine nor find authority in this jurisdiction or others to support a finding it is a well-known fact relating to human life that conception does not take place during menstruation. *See Varnell v. Green*, 512 So.2d 903, 904 (Miss.1987) (Miss.Sup.Ct. found no cases in which a court took judicial notice of the relation between the dates

of a woman's menstrual cycle and her fertility).

In *Varnell*, the Mississippi court held the trial court in a paternity action should not have taken judicial notice of facts and theories relating the human menstrual cycle to fertility. The court followed the general rule courts may take judicial notice of well-known medical and other scientific facts relating to human life to the extent they are commonly known, but if any doubt exists as to whether a matter is a fact of general knowledge it should be resolved in the negative, and noted other courts squarely confronted with the issue have failed to take judicial notice. *Id.* at 904 (citing *Harris v. State*, 28 Ala.App. 23, 177 So. 311, 312 (1937); *Hassler v. District of Columbia*, 122 A.2d 827, 830–31 (D.C. 1956); *Lambert v. Dally*, 30 Ohio App.2d 36, 281 N.E.2d 859, 860 (1972)).

█ The fact Carol was menstruating at or within twenty-four hours of the alleged conception date raises a question of what the gestation period in fact was. Consequently, in this case there is a doubt with reference to the gestation period and medical evidence is necessary to establish the gestation period. *See, e.g., Linda WW v. William XX*, 69 A.D.2d 918, 415 N.Y.S.2d 275, 276 (1979) (court considered medical doctor's conclusion concerning the period in which conception could not have occurred based on fact of mother's last menstrual period and data pertaining to ovulation).

We reverse and remand for further evidence.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

SNELL, J., takes no part.