In re the Marriage of Connie S. BETHARDS and Dennis Keith Bethards.

Upon the Petition of Connie S. Bethards, Petitioner–Appellee,

And Concerning Dennis Keith Bethards, Respondent–Appellant.

No. 93–0900.

Court of Appeals of Iowa.

Nov. 28, 1994.

David W. Stamp of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for appellant.

Frances L. Gohlke of Carney & Gohlke, Waverly, for appellee.

SACKETT, Judge.

Respondent-appellant Dennis Keith Bethards seeks to modify his dissolution decree to strike the provision he pay child support for a child born to petitioner-appellee Connie S. Bethards during the parties' marriage. Testing done after the modification petition was filed shows the child is not Dennis's. The question in this appeal is whether the trial court was correct in denying the petition for modification. We reverse and modify the decree to strike the provision Dennis pay support for the child.

Connie's and Dennis's marriage was dissolved in June 1986. The dissolution decree contained custody, visitation, and support provisions for three children. Only the paternity of the youngest child, Micah, is subject to question. Connie received custody of Micah. Dennis was ordered to pay support for him. Dennis has paid the support. Dennis was also granted visitation with Micah which he has exercised. No tests were conducted prior to the dissolution to determine paternity, and paternity was not litigated as an issue before the court at the time the dissolution decree was entered.

In August 1991,[1] Dennis filed this petition to modify. Blood testing done in late 1992 and early 1993 and evaluated by Genetic Design concluded:

> The alleged father, DENNIS K. BETHARDS, lacks the following genetic marker(s) present in the child, MICAH BETHARDS, and absent in the mother, PGM1 2–. Therefore, the alleged father cannot be the biological father of the child. The alleged father is also excluded by DNA probe technology.

The trial court denied Dennis's application finding:

> [t]he circumstances of the parties have not changed substantially with regard to their awareness of the dispute over the paternity of Micah. The evidence supports the finding that both parties knew that Dennis was not the likely biological father of Micah. Despite that knowledge, Dennis has treated him as his son for all practical purposes since birth, continued to do so through the dissolution proceedings, and exercised his rights and dutifully discharged his responsibilities with respect to Micah for the years following entry of the

---

1. Iowa Code section 598.21(8)(k) (1991) provides the court, in determining whether there has been a change of circumstances, shall consider, among other things, the following:

k. Changes in technology related to determinations of paternity; subject to the following conditions and limitations: (1)(a) For orders entered before July 1, 1990, a petition to modify must be filed by July 1, 1991, provided that the child is under the age of nineteen years at the time the petition to modify is filed.

The decree was filed before July 1, 1990, Micah was not yet nineteen when it was filed, the petition to modify was not filed until August 1991, and there is no showing the tests to establish nonpaternity were not available when the dissolution was entered. Consequently, this section has no application to this case.

decree. The court concludes, therefore, that respondent has failed to meet his burden to show that a substantial change in circumstances has occurred since the entry of the original decree.

Dennis contends he has met his burden to show a substantial change of circumstances since the original decree was entered. *See In re Marriage of Chmelicek,* 480 N.W.2d 571, 574 (Iowa App.1991).

Medical science has advanced and there now are more testing procedures to confirm or deny paternity. Currently, available blood tests allow exclusion of the father to be made with ninety-nine percent accuracy. *See State ex rel. Wegman v. Schulz,* 417 N.W.2d 228, 231 (Iowa App.1987). The advent of this testing has only come about during the past two decades and public awareness of its availability is of very recent origin. Presumptions that children born during a marriage were legitimate have historically been extremely strong, *see Kuhns v. Olson,* 258 Iowa 1274, 1276, 141 N.W.2d 925, 926 (1966), but have been weakened in the advent of testing. *See In re Marriage of Schneckloth,* 320 N.W.2d 535, 536 (Iowa 1982). There is strong support for medical evidence to play a cardinal role in paternity disputes. *See Schulz,* 417 N.W.2d at 231. The availability of the testing has opened new challenges to paternity issues. Despite the scientific strength of the tests, Iowa has not adopted a statute that provides that blood and genetic tests are conclusive evidence of nonpaternity. The Iowa court has declined to hold blood tests are conclusive evidence of nonpaternity as a matter of law. *Petition of Bruce,* 522 N.W.2d 67, 70 (Iowa 1994); *In re Estate of Hawk v. Lain,* 329 N.W.2d 660, 662 (Iowa 1983); *Schneckloth,* 320 N.W.2d at 538. But courts have recognized the highly persuasive nature of blood tests on the issue of nonpaternity. *Schneckloth,* 320 N.W.2d at 538.

We review de novo. *Schneckloth,* 320 N.W.2d at 538. The facts are not in dispute except as to the extent of Dennis's knowledge of the facts of Micah's conception at the time the dissolution decree was entered.

Dennis learned, before the marriage was dissolved, Connie had an affair during the marriage near the time of Micah's conception. Connie filed a verified dissolution petition that alleged Micah was a child of the marriage. The issue of Micah's paternity was not litigated in the dissolution action; there was no specific finding in the dissolution decree Micah was or was not a child of the marriage. Micah's custody was determined and Dennis received visitation with him and was ordered to pay child support for him. In addressing the issue of visitation and child support, the dissolution court referred to Micah as Dennis's son.

The arguments of the parties can be focused on three questions:

1. Did Dennis introduce evidence showing changed circumstances?

2. Was Dennis estopped by his actions from disclaiming he was Micah's father?

3. Was the dissolution decree res judicata as to the issue of Dennis fathering Micah?

It is without dispute Dennis questioned Micah's paternity from his conception. It is also without dispute Connie was aware at all times Micah was not Dennis's son. She knew then and knows now who the natural father of Micah is. Connie's sworn verified dissolution petition alleged Micah was a child of the marriage. Testing was available in 1986 when the dissolution was granted to determine paternity. *See Schneckloth,* 320 N.W.2d at 537–38. Dennis did not, however, have the benefit of testing until after the petition for modification was filed.

■ Dennis testified he did not definitely know he was not the father of Micah until two years before the modification petition was filed. Dennis testified, when he questioned the paternity, Connie assured him he was Micah's father. The actions by Connie, in representing to the court in the dissolution petition Dennis was Micah's father and in representing to child support recovery Dennis was Micah's father, are strong evidence corroborating Dennis's testimony Connie deceived him into believing at the time of the dissolution he was Micah's father; and he did not know until 1988 he was not Micah's father. We find the question of Micah's paternity was not within the knowledge or contem-

plation of the trial court when the dissolution decree was entered.

■ The provisions for support payments in a divorce decree are final as to circumstances then existing. *Mears v. Mears,* 213 N.W.2d 511, 515 (Iowa 1973). It follows that a divorce or dissolution of marriage decree will not be modified as regards child support provisions unless it is proven by a preponderance of the evidence its enforcement will be attended by positive wrong or injustice as a result of material and substantial changes in the circumstances since the date of the original decree or of any subsequent intervening proceedings which considered modification of the child support provisions of the original decree. *Id.*

■ The changed circumstances relied upon must be material and substantial, not trivial, more or less permanent or continuous, not temporary, and must be such as were not within the knowledge or contemplation of the court when the decree was entered. *Id.*

■ Having found the evidence of Micah's paternity was not within the knowledge or contemplation of the court when the dissolution decree was entered, we determine Dennis has met his burden of showing a change of circumstances.

■ The next question is whether Dennis's action precluded or estopped him from denying paternity at this time. The doctrine of equitable estoppel has not been applied where paternity is at issue. *In re Marriage of Halvorsen,* 521 N.W.2d 725, 728 (Iowa 1994). An Iowa court cannot order support for a stepchild; nor may one who accepts the responsibility for the child be required to furnish support for the child subsequent to the dissolution of marriage. *See In re Marriage of Holcomb,* 471 N.W.2d 76, 78 (Iowa App.1991). Nor have the Iowa courts adopted an equitable parents theory. *In re Ash,* 507 N.W.2d 400, 403–04 (Iowa 1993). Dennis is not precluded or estopped from denying paternity at this time.

■ The last issue is whether principles of res judicata preclude Dennis from litigating the issue of Micah's paternity. The trial court found the issue of Micah's paternity was not litigated in the dissolution action; a finding with which we agree.

This court addressed a similar issue in *In re Marriage of Detert,* 391 N.W.2d 707, 710 (Iowa App.1986), and, in a four-to-two decision, determined where a decree annulling a marriage provided the mother would be granted custody of the minor child of the parties and the father would pay support for the minor child of the parties, but the stipulation and decree did not expressly state the alleged father was the father of the child, the paternity issue had been determined and could not be raised in a modification. But in *Detert,* 391 N.W.2d at 710, there, also, were blood tests conducted and the issue of paternity was raised in an application to reconsider, filed after the dissolution decree was entered. While a cursory reading of *Detert* might suggest our decision was reached on the finding and stipulation of support and visitation, this court found the paternity matter actually litigated. A blood test was conducted and the issue was raised by the father in an application for reconsideration of a temporary support order.[2] *Id.* 391 N.W.2d at 710. Consequently, we find *Detert* distinguishable.

This case is more similar to *In re Evans,* 267 N.W.2d 48, 51 (Iowa 1978), where paternity of a child was not expressly determined in the original dissolution action and the court stated it could be litigated in an application to modify the dissolution decree.

■ We have concern about the effect this issue has on Micah and similarly situated children who are deceived in believing a man who is not their biological father is their biological father. There are serious legal and emotional implications in bastardizing Micah. There are also serious legal and emotional implications in failing to do so and in perpetuating a fraud on Micah concerning his biological father. Dennis has been de-

---

**2.** We note, too, *Detert* was cited in *State ex rel. Hunter v. Hunter,* 501 N.W.2d 533, 536 (Iowa 1993), for the proposition that prior law did not consider improved technology a change of circumstances.

ceived and does not want to be legally determined to be Micah's father.

The truth is Dennis is not Micah's biological father. Should we ignore technology and the truth by continuing to perpetuate the fraud? Modern science forces us to face the issue which several decades ago would have been hidden.

We are without authority to unilaterally make an unrelated man, Dennis, the father of Micah. *See In re Marriage of Holcomb*, 471 N.W.2d 76, 78 (Iowa App.1991). Even if Dennis established a liberty interest in a relationship with Micah based on psychological ties which developed while he acted as his father, that interest would not defeat the liberty interest of Micah's biological father. *See Bruce*, 522 N.W.2d at 72; *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 846, 97 S.Ct. 2094, 2110–11, 53 L.Ed.2d 14, 36 (1977). In *Smith*, the court observed:

> [i]t is one thing to say that individuals may acquire a liberty interest against arbitrary governmental interference in the family-like associations into which they have freely entered, even in the absence of biological connection or state-law recognition of the relationship. It is quite another to say that one may acquire such an interest in the face of another's constitutionally recognized liberty interest that derives from blood relationship, state-law sanction, and basic human right . . .

*Smith*, 431 U.S. at 846, 97 S.Ct. at 2110–11, 53 L.Ed.2d at 36.

■ One who accepts the responsibility for a child as *in loco parentis* cannot be required to furnish support for the child subsequent to dissolution of marriage. *In re Marriage of Carney*, 206 N.W.2d 107, 112 (Iowa 1973); *Holcomb*, 471 N.W.2d at 78.

■ Paternity must be shown by a preponderance of the evidence. *In re B.G.C.*, 496 N.W.2d 239, 246 (Iowa 1992); *Schneckloth*, 320 N.W.2d at 536; *Moody v. Christiansen*, 306 N.W.2d 775, 777 (Iowa 1981). Based largely on the result of the blood tests, Dennis proved by a preponderance of the evidence he is not the biological father of Micah. *B.G.C.*, 496 N.W.2d at 246.

We determine the principles of res judicata do not apply to preclude litigation in these proceedings.

We find Dennis is not Micah's father and terminate Dennis's child support obligation as of the date of the order from which appeal was taken.

**REVERSED AND MODIFIED.**

All Judges concur except CADY, J., who dissents.

CADY, Judge (dissenting).

I respectfully dissent, and advance two reasons to support my departure from the majority. First, I believe Dennis is precluded from litigating paternity by the doctrine of issue preclusion. Furthermore, I believe it is inequitable to modify a stipulated or contested decree for dissolution of marriage by contesting paternity.

Our courts do not recognize legal rights or obligations between a child and a person who is not the legal parent of the child, but we do recognize finality in our judicial decisions. In this case, Dennis and Connie divorced in 1986. The decree defined the rights and obligations of the parties concerning the three children born during the marriage. Although the decree made no explicit finding of paternity, this finding was implicit by the court's imposition of a child support obligation. It was implicit because our law does not impose a child support obligation on a nonparent. Consequently, all elements of res judicata are satisfied in this case. This doctrine of finality prevents Dennis from relitigating the issue of paternity in his modification action. *See In re Marriage of Detert*, 391 N.W.2d 707, 709–710 (Iowa App.1986).

The majority relies on *In re Evans*, 267 N.W.2d 48 (Iowa 1978), to support its conclusion that res judicata does not apply. *Evans* holds that paternity may be litigated following a default decree since the issue was never expressly determined in the original divorce action. *Id.* at 51. The court in *Evans*, however, relied on the modification requirement of a change in circumstances to support its holding. *Id.* at 50–51. It never specifically addressed the issue whether the doctrines of claim or issue preclusion prevent litigation

over paternity following a divorce. I acknowledge that facts giving rise to a dispute over paternity may satisfy the change in circumstances test, but those facts fall short of the res judicata hurdle. Moreover, the court in *Evans* was faced with a default decree. I question whether the court intended its pronouncement to apply to a stipulated or contested decree.

Secondly, this case is before us on a claim for a modification of the child support provision of a divorce decree. The strict requirements of modification not only require a substantial change in circumstances, but, in each case, it must also be equitable to modify the decree. *In re Marriage of Glass*, 213 N.W.2d 668, 671 (Iowa 1973). Furthermore, our law requires that the changed circumstances relate to the welfare of the child. *In re Marriage of Brown*, 247 N.W.2d 2, 4 (Iowa 1976).

I am unable to understand how judicial bastardization of a child relates to the welfare of the child or would satisfy any test of equity. Micah is 15 years old. In his eyes, Dennis is his father. The majority has neglected to fully consider the devastating and cruel consequences of its decision on Micah. Dennis apparently has as well. Our law must not.

This case has been propelled by scientific advancements in genetic testing. Dennis utilized this technology to unlock a deep lingering suspicion of vast consequences. Science and medicine, however, do not control the direction of our law. Our law is not required to accept medical advancements as providing a better way of life. For sure, some advancements in medicine and science can cause agonizing debates in our nation's court rooms, and produce painful and even undesirable circumstances for humanity. *See Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

Consequently, the important human aspect of judging must not be lost. There is a reason why our law gives courts the ability to deny a modification if the result would be inequitable.

I believe this case presents circumstances which the law should refuse to sanction. We should discourage the practice of using advanced medical technology to bastardize a child after parental divorce by simply refusing to recognize any legal consequences of blood tests after divorce. This may not protect Micah, who is aware of his father's efforts to discontinue his support obligation by severing their relationship, but it would protect children in the future from suffering such devastation. A divorce impacts children enough. We should protect them from further suffering. I would deny the modification under the particular facts of this case on the grounds that it is inequitable and adverse to Micah.