427 So.2d 374 (1983)
Robert Van NOSTRAND, Petitioner,
v.
Nunzio J. OLIVIERI and Carol A. Olivieri, Respondents.
No. 82-1936.
District Court of Appeal of Florida, Second District.
March 4, 1983.
*375 Erik A. Dahlgaard of Boyer & Dahlgaard, P.A., Sarasota, and C. Eugene Jones, Sarasota, for petitioner.
James E. Aker and Michael J. Furen of Icard, Merrill, Cullis, Timm & Furen, P.A., Sarasota, for respondents.
GRIMES, Judge.
This petition for certiorari involves an interaction among some important legal, moral, and sociological principles.
On March 4, 1978, Carol A. Olivieri (mother) gave birth to Christie A. Van Nostrand (Christie). At the time of the birth, the mother was known as Carol A. Van Nostrand because she had been married to Robert Van Nostrand since January 17, 1976. This marriage was dissolved on January 20, 1981. A marital settlement agreement was incorporated into the final judgment, and the parties were ordered to comply with it. The settlement agreement, signed by both parties, acknowledged that Christie had been born of the marriage and awarded custody to the mother with the father having reasonable visitation rights. The father was to pay the mother $400 per month for child support.
On July 18, 1981, the mother married Nunzio J. Olivieri. Since that date, Christie has resided with the Olivieris, though Van Nostrand has continued to exercise his visitation privileges. On August 20, 1982, Olivieri and the mother, individually and purporting to act as guardians for Christie, sued Van Nostrand alleging that Olivieri was Christie's natural father. They asked that Olivieri be declared Christie's father and that Van Nostrand be declared to have no right of visitation or any other right of fatherhood. Van Nostrand denied that he was not Christie's natural father and pointed *376 out that he had been paying child support since the dissolution.[1]
Olivieri and the mother filed a motion to require Van Nostrand to submit to a Human Leukocyte Antigens (HLA) blood test as a means of determining whether he is Christie's father. The court ordered Van Nostrand to take the test at the movant's expense. In his petition to quash the order, Van Nostrand asserts that requiring him to take the test at this juncture of the case would cause him unnecessary humiliation and psychological damage, because the plaintiffs cannot successfully prosecute their action as a matter of law.
This court, as well as others, has recognized the relevance of the HLA blood test in paternity actions. McQueen v. Stratton, 389 So.2d 1190 (Fla. 2d DCA 1980); Carlyon v. Weeks, 387 So.2d 465 (Fla. 1st DCA 1980). Therefore, the taking of an HLA test would ordinarily be a proper aspect of discovery. Fla.R.Civ.P. 1.280(b)(1). However, this case is not in the customary posture of a paternity action in which the mother of an illegitimate child seeks to establish the defendant as the child's father. Here, the Olivieris directly attack the presumption that a child born during wedlock is legitimate. See Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (Fla. 1944).
The companion cases of Johnson v. Johnson and Riggs v. Riggs, 395 So.2d 640 (Fla. 2d DCA 1981), involved dissolution proceedings in which the husbands had agreed to support the minor children which were born during their marriages. The former wives later brought petitions for enforcement of child support. In opposition, the husbands attempted to exclude themselves as fathers of the children and obtained court orders requiring the mothers and the children to submit to HLA blood tests. On certiorari, this court concluded that the dissolution judgments were res judicata of the paternity of the child. Thus, the orders were quashed, because the fathers did not have a right to reopen the proceedings and relitigate the matters which were resolved in the dissolution proceedings.
In Herout v. Lawrence, 423 So.2d 558 (Fla. 1st DCA 1982), the mother gave birth to a son while married to Jackson. She later sued Jackson for divorce alleging that the son was a child of their marriage and praying that Jackson be ordered to pay child support. The court granted the divorce and entered an order of child support for the son. The mother later sued Lawrence alleging that he was the real father of her son. Our sister court affirmed a summary judgment for Lawrence on the ground that the mother was estopped from denying her former position that Jackson was the father of her son.
The foregoing rationale effectively forecloses the mother's cause of action. She acknowledged in the marital separation agreement that Christie was born of her marriage to Van Nostrand. She sought and obtained an order requiring Van Nostrand to pay child support. She cannot now contend that Van Nostrand is not Christie's father.
The same principles do not apply to Olivieri because he was not a party to the marital settlement agreement or the dissolution proceeding. Hence, the defenses of res judicata or estoppel cannot be used against him. In several other jurisdictions, persons in the same posture as Olivieri have been allowed to prosecute similar actions. O---- F---- L---- v. M---- R---- R----, 518 S.W.2d 113 (Mo. App. 1974); A---- B---- v. C---- D----, 150 Ind. App. 535, 277 N.E.2d 599 (1971); In Re Stroope's Adoption, 232 Cal. App.2d 581, 43 Cal. Rptr. 40 (Cal. App. 1965). In Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980), our supreme court expressly considered the question of whether a man could seek an adjudication that he was the father of a child born to a woman while she was married to another man. Unlike the present case, not *377 only the mother but also the man to whom she was married when the child was born, admitted that the plaintiff fathered the child. Nevertheless, the principles of that case concerning standing would seem to apply here.
With regard to a putative father's general standing to assert an interest in or on behalf of his illegitimate children, we add one further comment. Because of dissimilarities in their circumstances, policy considerations and problems of proof, a putative father of an illegitimate child has historically not been accorded all the parental rights which are enjoyed by the natural mother and a married father. Conversely, the putative father has not always shared the same parental responsibilities which are imposed on the natural mother and the married father. As in the past, the law will in the future continue to develop to reflect the changing demands, needs and perceptions of a dynamic society. The fact remains, however, that the unwed father is not in all respects similarly situated with the unwed mother or the married father. This fact constitutionally permits the state to distinguish between them when the state does so on a basis realistically related to the differences in their situations. See Parham v. Hughes [441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979)], supra. As a consequence of the differences in their situations, the unwed father is required to show that he has manifested a substantial concern for the welfare of his illegitimate child before he may be accorded standing to assert an interest with respect to that child. Compare Caban v. Mohammed [441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979)], supra, and In Interest of Baby Boy S., 349 So.2d 774 (Fla. 2d DCA 1977), with Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and Department of Health & Rehabilitative Services v. Herzog, 317 So.2d 865 (Fla. 2d DCA 1975). In this case appellant has apparently established a familial relationship with his illegitimate children by raising and supporting them. In doing so he has manifested a substantial and continuing concern for the welfare of his children. As a result, we conclude that he has standing to bring this suit.
390 So.2d at 60-61.
Thus, it cannot be said as a matter of law that Olivieri is precluded from seeking an adjudication that he is Christie's father. As a condition of obtaining such an adjudication, he must prove standing by showing "that he has manifested a substantial concern for the welfare of his illegitimate child." 390 So.2d at 60. There has not yet been a determination that he has the requisite standing.
Ordinarily, the fact that a party ultimately may not be able to sustain his complaint does not serve to prevent him from obtaining full discovery on matters relevant to the issues in the case. See Deltona Corp. v. Bailey, 336 So.2d 1163 (Fla. 1976). However, we believe this case is exceptional because of the sensitive nature of the subject matter and the irreparable harm which could occur if Olivieri should fail to prove standing.[2]
We hold that in cases such as this, before a putative father may obtain discovery relating to the paternity of the child, he must first prove the requisite standing to go forward with the suit. Presumably, this will require a bifurcated proceeding in which the issue of standing is first resolved.[3] If the court rules that the putative father has the necessary standing to maintain the suit, the paternity of the child is then placed directly in issue and the HLA blood test becomes a proper subject of discovery. This procedure is analogous to a suit for an accounting in which the plaintiff must first establish the right to an accounting *378 before he is entitled to discovery on matters pertaining to the accounting itself. Charles Sales Corp. v. Rovenger, 88 So.2d 551 (Fla. 1956). Surely, the privacy interests of the defendant in a suit for accounting could not be greater than that of Van Nostrand in this case.
We grant certiorari and quash the order requiring Van Nostrand to take the HLA blood test as being premature.
RYDER and SCHOONOVER, JJ., concur.
NOTES
[1] The court appointed a guardian ad litem for Christie, but so far the guardian ad litem has not joined the Olivieris in their request for a declaration of paternity. This is only pertinent to our review because it demonstrates that we do not need to consider the validity of the complaint from Christie's viewpoint.
[2] The parties should be spared the possibility of a factual scenario in which the HLA test conclusively proves that Van Nostrand is not the father, yet the suit is dismissed because Olivieri fails to prove standing.
[3] Fla.R.Civ.P. 1.270(b) authorizes a separate trial of any issue to avoid prejudice.