**In re ADOPTION OF Jason Travis JOHNSON.**

**Billy Joe JOHNSON, et ux., Ruth Evelyn Johnson, and Orville G. Albrecht, Jr., Petitioners-Appellants,**

**v.**

**Paul Edward HALL, Respondent-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 28, 1984.

Application for Permission to Appeal Denied by Supreme Court Sept. 24, 1984.

**66**

Marietta M. Shipley, Shipley & Behm, Nashville, for petitioners-appellants.

John D. Kitch, Nashville, for respondent-appellee.

## OPINION

LEWIS, Judge.

On June 3, 1983, Billy Joe Johnson filed his petition in the Circuit Court for Davidson County, Tennessee, and sought to adopt his step-son, Jason Travis Johnson.[1] Ruth Evelyn Johnson, wife of Billy Joe Johnson and natural mother of Jason, joined in the petition as did Orville Albrecht, who alleged he was the natural father of Jason.

Ruth Johnson was granted a divorce from bed and board from Paul Edward Hall in February, 1978, with custody of the minor children born of that marriage awarded to Mrs. Johnson. On July 2, 1980, a final decree of divorce was granted. However, an award of custody was not made. On May 24, 1982, the final order granted custody of two of the minor children to Paul Edward Hall and the custody of Jason to Mrs. Johnson. In her complaint for absolute divorce, Ruth Johnson swore that Jason was "born of the marriage" between her and Paul Edward Hall. Paul Hall was ordered to pay child support for Jason.

The Trial Court dismissed the adoption petition on the motion of Hall who claimed that petitioners were estopped to deny that he was the natural father and legal father of Jason. The issue in this Court is whether a step-father, who was not a party to the divorce proceedings, is bound by the sworn statement of the mother.

Paul Edward Hall and Ruth Johnson were married in 1964, and three children were born during their marriage. The subject of this lawsuit is the youngest child, Jason, who was six months old when Ruth filed a sworn complaint for divorce and listed Jason and his two siblings as "children born of this marriage." Ruth obtained a divorce from bed and board, custody of the children, and child support in February, 1978. In June of 1980, she received an absolute divorce and married Billy Joe Johnson in February, 1982.

The final divorce decree did not award custody to either parent. In 1981 Hall filed a petition to gain custody of all the children. Eventually, Hall was given custody of the two oldest children and ordered to continue to pay child support for Jason, who remained with Ruth Johnson. By affidavit, Ruth Johnson now says that, although she was married to Hall, she had weekly sexual relations with Albrecht. She also says that she did not have sexual relations with her husband from March, 1976 until August, 1976, the period when Jason was conceived. She did have sexual relations with her husband after she learned she was five weeks pregnant by Albrecht.

**1.** The petition for adoption is captioned "In Re: Adoption of Jason Travis Johnson" notwithstanding that the minor's name is Jason Travis Hall.

Albrecht, by affidavit, says that Jason is his child and that he told Ruth Johnson that she should sleep with her husband at least once after she knew of the pregnancy.

Ruth Johnson and Albrecht have given permission for Billy Joe Johnson to adopt Jason. Hall filed a motion to dismiss pursuant to Rule 12 of Tennessee Rules of Civil Procedure, alleging that petitioners are estopped to deny that he is the natural and legal father of Jason, that they waived the right to challenge his paternity, that they are guilty of laches, and that the doctrines of *res judicata* and collateral estoppel bar them from raising the issue of Jason's paternity, and further, that petitioners have unclean hands.

Hall's Rule 12, Tennessee Rules of Civil Procedure, motion was treated as a Rule 56, Tennessee Rules of Civil Procedure, motion for summary judgment by the Trial Court. The Trial Court's order states that matters outside the pleadings were considered by the Court. Since matters outside the pleadings were considered, the motion is one for summary judgment. Tenn. R.Civ.P. 12.03.

■■■ A party may obtain summary judgment only if there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Tenn.R. Civ.P. 56.03. In Tennessee, the presumption of legitimacy of a child born during a marriage may be overcome by clear, cogent, and convincing testimony that the husband and wife were not cohabitating during the time of conception. *Frazier v. McFerren*, 55 Tenn.App. 431, 402 S.W.2d 467 (1964). There is a material fact in dispute in this case and, therefore, summary judgment is inappropriate.

■■■ We agree with Hall that Ruth Johnson may not testify that Hall is not the father of Jason. She is precluded from testifying other than that Hall is the father under the theories of judicial estoppel, *res judicata,* and collateral estoppel.

A general statement of the doctrine of judicial estoppel is that where one states

on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same.

*Melton v. Anderson,* 32 Tenn.App. 335, 342, 222 S.W.2d 666, 669 (1948). *Res judicata* provides that

an existing final judgment rendered upon the merits by a court of competent jurisdiction is conclusive of the rights, questions and facts in issue as to the parties and their privies in the same action in other judicial tribunals of concurrent jurisdiction.

*Shelley v. Gipson,* 218 Tenn. 1, 12, 400 S.W.2d 709, 714 (1966). This bar applies to the same parties or their privies on issues that were or could have been adjudicated in the first suit. *Scales v. Scales,* 564 S.W.2d 667 (Tenn.App.1977); *Hicks v. Hicks,* 26 Tenn.App. 641, 176 S.W.2d 371 (1943). The doctrine of collateral estoppel is

an extension of the principle of *res judicata,* and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment.

*Booth v. Kirk,* 53 Tenn.App. 139, 143, 381 S.W.2d 312, 314 (1963) (citations omitted). Furthermore:

Under the doctrine of collateral estoppel, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation.

*King v. Brooks,* 562 S.W.2d 422, 424 (Tenn. 1978) (citations omitted).

Here, Mrs. Johnson is clearly estopped to make any other statement than that Jason is the son of Hall. Her sworn petition for divorce states that Jason was a child born of the marriage. This fact was not disputed in Hall's answer. Hall was ordered to

pay child support by the divorce decree. Although paternity was not an issue, its determination was necessary since only natural parents or adoptive parents can be required to pay child support. Tenn.Code Ann. § 36–6–101. Mrs. Johnson cannot testify that Hall is not the father of Jason.

■ However, Albrecht and Billy Joe Johnson were not parties to the prior litigation and therefore do not suffer from the same infirmities. Hall attempts to argue that since Billy Joe Johnson is an assignee of Ruth Johnson and derives his rights from her, he is, therefore, judicially estopped. We do not agree. Billy Joe Johnson is in the position of step-father because of his relationship with Ruth Johnson, but he does not derive his right to attempt to adopt from that relationship alone. Tenn. Code Ann. § 36–1–105 states: "any person over eighteen (18) years of age" may petition to adopt a minor child. Albrecht is not estopped to testify concerning his relationship with Ruth Johnson since he had made no prior statements under oath and was not a party to the prior proceedings. We note that it is doubtful that he could testify to anything further than his relationship with Ruth Johnson since any "knowledge" that he has that he is the biological father would have to come from Ruth Johnson. We do not believe that Ruth Johnson should be allowed to testify through Albrecht when she is estopped from testifying directly.

We have found no Tennessee cases dealing with the question of whether the estoppel of one spouse applies to another when the second was not a party to the prior proceeding. However, there are a few cases in other jurisdictions which deal with similar problems. In those cases, the step-parent in the position of Billy Joe Johnson was trying to prove that he, not a third party, was the father. This is not a material distinction in determining whether the parties who were not part of the original proceedings are estopped by statements made there. Courts have refused to apply the doctrine of *res judicata* and collateral estoppel to parties not present. *Nostrand*

*v. Olivieri*, 427 So.2d 374 (Fla.Dist.Ct.App. 1983); *see also, A.B. v. C.D.*, 150 Ind.App. 535, 277 N.E.2d 599 (1971); *O.F.L. v. M.R.R.*, 518 S.W.2d 113 (Mo.Ct.App.1974).

Hall is correct in his assertion that before an adoption can occur the parents must either consent or have been determined to have abandoned the child. Tenn. Code Ann. §§ 36–1–108, 36–1–110. However, before he can invoke the protections of the adoption statute, he must be determined to be a parent within the meaning of the statute.

■ Our adoption statute does not define parent. The statute clearly contemplates natural or biological parents, adoptive parents, and guardians. The statute also acknowledges the existence of step-parents. No where does the statute address "presumptive" or "legal" parents. Our reading of the statute is that the legislature simply did not contemplate a situation in which a man paying child support under a judicial order, but without complete custody so as to be considered a guardian, could be in position of losing his parental rights. Adoption statutes must be construed strictly. *Delamotte v. Stout*, 207 Tenn. 406, 408, 340 S.W.2d 894, 895 (1960). Hall points out the language in Tenn.Code Ann. § 36–1–137 which states that the consent of the adoptive parent shall be substituted for the natural parent in the case of a re-adoption. This he says indicates that the legislature contemplated that *legal* status, rather than biological status, confers rights on the parents. We do not agree. This section refers only to a second adoption of a child previously adopted. It does not refer to a child who has never been adopted. Furthermore, Hall is not an adoptive parent.

Hall also argues that all petitioners are judicially estopped from denying that Hall is the legal father because in the petition they state that "Paul Edward Hall is the legal father of Jason Travis Johnson by virtue of the prior marriage of Ruth Johnson and Paul Edward Hall." This argument is not convincing. Hall must have rights under the language of the statute.

He cannot gain a position by the characterization of another party.

We have considered each of Hall's remaining arguments and found them to be without merit.

The judgment of the Trial Court in sustaining the motion for summary judgment is reversed and the cause remanded to the Circuit Court for further necessary proceedings. Costs of this appeal are taxed equally to the parties. On remand, petitioners may introduce Albrecht's testimony for whatever it is worth and the Trial Court may also consider any other appropriate evidence. Ruth Johnson is estopped to testify contrary to her sworn statements in the divorce proceedings.

GODDARD and CANTRELL, JJ., concur.