IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 15, 2001 Session

## VICKY LYNN PEEK LOCKHART v. ROBERT LANCE LOCKHART

**Direct Appeal from the Chancery Court for Tipton County**
**No. 16958; The Honorable Martha B. Brasfield, Chancellor**

---

**No. W2000-02922-COA-R3-CV - Filed January 15, 2002**

---

The Appellant and the Appellee were divorced by final decree of divorce incorporating a marital dissolution agreement entered into by the parties. The marital dissolution agreement provided that the Appellee was to have custody of the parties' two minor children. The Appellant filed a petition to modify custody of the parties' children in the Chancery Court of Tipton County. At the hearing on the petition, the Appellant first raised the issue that the Appellee was not the biological father of one of the children. The trial court held that the Appellant was judicially estopped to raise the issue of the paternity of one of the children and denied the petition to modify custody.

The Appellant appeals the decision of the Chancery Court of Tipton County holding that the Appellant was judicially estopped to raise the issue of paternity and denying the petition to modify custody. For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Robert A. Wampler, Memphis, TN, for Appellant

Mitchell D. Moskovitz, Adam N. Cohen, Memphis, TN, for Appellee

**OPINION**

**I. Facts and Procedural History**

The Appellant, Vicky Lynn Lockhart ("Ms. Lockhart"), was four months pregnant when she began dating the Appellee, Robert Lance Lockhart ("Mr. Lockhart"). The child, Amber, was born on January 14, 1992. Ms. Lockhart and Mr. Lockhart were married on March 28, 1992. Amber has never been told that Mr. Lockhart is not her biological father, and she has shared his last name since her birth. Mr. Lockhart, however, has never legally adopted Amber.

On March 14, 1998, Mr. Lockhart filed a complaint for divorce from Ms. Lockhart. The complaint for divorce stated that there were two minor children born of the marriage, Amber and Zachary. Ms. Lockhart failed to file an answer to the complaint for divorce. On June 30, 1998, the parties entered into a marital dissolution agreement. The marital dissolution agreement stated that the parties had two minor children, Amber and Zachary. The marital dissolution agreement stated that Mr. Lockhart would have sole custody of Amber and Zachary. Mr. Lockhart and Ms. Lockhart signed the marital dissolution agreement. The marital dissolution agreement stated that the parties signed the agreement freely and voluntarily. On August 13, 1998, Mr. Lockhart and Ms. Lockhart were divorced by final decree of divorce entered by the Chancery Court of Tipton County. The final decree of divorce incorporated by reference the marital dissolution agreement.

On March 25, 1999, Ms. Lockhart filed a sworn petition to modify the final decree of divorce as to custody "of the minor children of Petitioner and Respondent, namely Amber . . . and Zachary . . . ." The petition alleged that a material change in circumstances had occurred since the entry of the final decree of divorce which required that custody of the children be awarded to Ms. Lockhart. On April 23, 1999, Mr. Lockhart filed a response to the petition to modify the final decree of divorce. On June 10, 1999, the maternal grandparents, Melvin and JoAnn Peek ("the Peeks"), filed a petition to intervene, seeking custody of the children. The petition to intervene alleged that a material change in circumstances had occurred since the entry of the final decree of divorce which required that custody of the children be taken away from Mr. Lockhart. On October 7, 1999, the trial court appointed a guardian ad litem to represent the interests of the children. At the request of the guardian ad litem, a licensed clinical psychologist, Stacey Dixon ("Dr. Dixon") administered a psychological evaluation to Mr. Lockhart, Ms. Lockhart, Amber, and Zachary. Dr. Dixon also met with Mr. Lockhart's wife, Anaka Lockhart ("Anaka"), whom he married in April, 1999, and Ms. Lockhart's husband, Eric Schultz ("Mr. Schultz"), whom she married in February, 2000.

On July 17, 2000, Mr. Lockhart filed a petition to modify the final decree of divorce, seeking permission of the trial court to relocate with the children to Alabama. On July 19, 2000, Ms. Lockhart filed a response in opposition to relocation of the children. On September 11, 2000, the guardian ad litem filed his report. The guardian ad litem stated that he could not recommend a change of custody because Ms. Lockhart failed to meet her burden to show a material change in circumstances sufficient to warrant a change of custody. The guardian ad litem stated that "[a]s indicated by Dr. Dixon, both parties seem extremely capable of caring for the children but the father's history and current marital status seem to weigh in his favor. The children seem to be flourishing in his care and there appears to be no reason to change that care." On September 13, 2000, Mr. Lockhart filed a motion to dismiss the petition to intervene filed by the Peeks.

The hearing on the petition to modify the final decree of divorce filed by Ms. Lockhart, the petition to intervene filed by the Peeks, and the petition to modify the final decree of divorce filed by Mr. Lockhart was held on September 13, 2000. At the hearing, Ms. Lockhart first raised the issue that Mr. Lockhart was not the biological father of Amber. Ms. Lockhart testified that she did not have an attorney when she signed the marital dissolution agreement which stated that the parties had

two minor children.  Ms. Lockhart claimed that at the time she signed the marital dissolution agreement, she was "a basket case," and Mr. Lockhart emotionally blackmailed her into signing the marital dissolution agreement.  Mr. Lockhart denied that he told Ms. Lockhart that he would "drag her and the kids through the mud" if she refused to sign the marital dissolution agreement.  The trial court held that Ms. Lockhart was judicially estopped from raising the issue that Mr. Lockhart was not the biological father of Amber.  The trial court stated:

> [W]e know that Mr. Lockhart is not [Amber's] biological parent.  I don't think there's any question about that.  But what we do have are orders and petitions in this file that were done long before today, and I have a man who has filed a petition saying that he was the father of Amber.  The mother did not file an answer.  She did not dispute that. She filed an MDA and signed it, acknowledging that the parties have two children: Amber and Zachary.  And I realize she told me that there were problems that she was having, but there was nothing that – to show me that she could not have obtained an attorney and contested this. And two years is – I can't go back and change that divorce decree. So when I have these documents that have already been ruled on by the Court, I don't think I can go back and change them.  And I think – I don't have any choice but to rule that the mother is estopped and denied that Mr. Lockhart is the father of Amber.

On October 26, 2000, the trial court entered an order denying the petition to modify the final decree of divorce filed by Ms. Lockhart.  The trial court found that Ms. Lockhart failed to show that there had been a material change in circumstances sufficient to warrant a change of custody.  The trial court denied the Peeks' petition to intervene.  The trial court granted the petition to modify the final decree of divorce filed by Mr. Lockhart, permitting him to relocate to Alabama with the children.  This appeal followed.

## II.  Standard of Review

Our review of the trial court's child custody decision is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure.  See Ruyle v. Ruyle, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); Koch v. Koch, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993).  Rule 13(d) requires this Court, in conducting a *de novo* review of the record, to presume that the trial court's factual findings are correct, unless the evidence in the record preponderates otherwise.  See TENN. R. APP. P. 13(d).  In applying this standard of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion."  Koch, 874 S.W.2d at 575.  Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility" during the proceedings, appellate courts "are reluctant to second-guess a trial court's decisions."  Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).  The court's paramount concern in a custody case is the welfare and best interest of the parties' minor children.  See Ruyle,

928 S.W.2d at 441; Koch, 874 S.W.2d at 575.  This determination necessarily turns on the particular facts of each case.

### III.  Law and Analysis

The following issues, as we perceive them, are presented for our review:

1. Whether Ms. Lockhart was barred by judicial estoppel to raise the issue of the paternity of Amber;
2.  Whether, in the event Ms. Lockhart was barred by judicial estoppel to raise the issue of the paternity of Amber, Ms. Lockhart posed a threat of substantial harm to the children;
3.  Whether the trial court erred by finding that there was not a material change in circumstances sufficient to modify the final decree of divorce with respect to child custody; and
4.  Whether Mr. Lockhart should be awarded his reasonable attorney's fees and expenses incurred in defending this appeal.

We will examine each issue in turn.

The first issue presented for our review is whether Ms. Lockhart was barred by judicial estoppel to raise the issue of the paternity of Amber.  Under the doctrine of judicial estoppel, "where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same."  Melton v. Anderson, 222 S.W.2d 666, 669 (Tenn. Ct. App. 1948) (citing Tate v. Tate, 148 S.W. 1042 (Tenn. 1912)).  Judicial estoppel prevents a party from denying the truth of a former sworn statement in a later proceeding, plea, or motion.  See Terox Corp. of Am. v. Carr, 376 S.W.2d 735, 738-39 (Tenn. Ct. App. 1964).  Judicial estoppel does not apply, however, where the statement was inadvertent, inconsiderate, mistaken, or anything short of a willfully false statement.  See Monroe County Motor Co. v. Tennessee Odin Ins. Co., 231 S.W.2d 386, 392 (Tenn. Ct. App. 1950) (citations omitted).

In Davis v. Davis, No. 03A01-9509-CH-00327, 1996 WL 12584, *1 (Tenn. Ct. App. Jan. 11, 1996), Ms. Davis filed a complaint for divorce from Mr. Davis in which she requested custody of the parties' child.  See id. at *1.  The complaint stated that the child was born "of the parties."  See id. at *2.  Mr. Davis filed an answer and counter-complaint, requesting custody of the parties' child.  See id. at *1.  Ms. Davis then filed a motion to amend her complaint to assert that Mr. Davis was not the father of the child and request a DNA test in order to establish paternity.  See id.  The trial court refused to allow Ms. Davis to amend her complaint and awarded custody of the child to Mr. Davis.  See id.  The trial court stated, "when [Ms. Davis'] petition for divorce was filed, she alleged that the child was born of that unity.  It is therefore ruled that she is estopped from seeking such tests, . . ."  Id. at *2.  Ms. Davis appealed the trial court's refusal to allow her to amend her complaint to request a DNA test.  See id. at *1.  In affirming the trial court's decision, the court of appeals held that "the appellant's sworn complaint refers to the child as being born 'of the parties.'  The rule of judicial estoppel does not permit parties to take inconsistent or contradictory positions during the course of litigation."  Id. at *2.

-4-

In In re Adoption of Johnson, 678 S.W.2d 65 (Tenn. Ct. App. 1984), Mrs. Johnson filed a complaint for divorce from Mr. Hall in which she alleged that there were three minor children "born of the marriage." See id. at 66. In February, 1978, Mrs. Johnson was granted a divorce from bed and board from Mr. Hall and custody of the three children was awarded to Mrs. Johnson. See id. In July, 1980, a final decree of divorce was granted, but an award of custody of the three children was not made. See id. In May, 1982, the final order granted custody of two of the children to Mr. Hall and granted custody of one of the children, Jason, to Mrs. Johnson. See id. In June, 1983, Mrs. Johnson's husband, Mr. Johnson, filed a petition seeking to adopt Jason. See id. Mrs. Johnson joined in the petition as did Mr. Albrecht, who alleged that he was the natural father of Jason. See id. Mrs. Johnson filed an affidavit stating that Mr. Hall was not the father of Jason. See id. Mr. Hall filed a motion to dismiss the adoption petition. See id. at 67. The trial court granted the motion, and Mr. Johnson, Mrs. Johnson, and Mr. Albrecht appealed. See id. The court of appeals held that

> [Mrs. Johnson] may not testify that [Mr. Hall] is not the father of Jason. She is precluded from testifying other than that [Mr. Hall] is the father under the theories of judicial estoppel, res judicata, and collateral estoppel. . . . Here, Mrs. Johnson is clearly estopped to make any other statement than that Jason is the son of [Mr. Hall]. Her sworn petition for divorce states that Jason was a child born of the marriage.

Id.

In Tennessee Dep't of Human Servs. v. Taylor, 7 TAM 12-12, at 1 (Tenn. Ct. App. Feb. 8, 1982), Ms. Lanier filed a complaint for divorce from Mr. Lanier in September, 1975 in which she alleged that there were four children born of the marriage. See id. One of the children, Terry, was age eleven months at the time Ms. Lanier filed the complaint for divorce. See id. The complaint for divorce alleged that the parties separated in March, 1973 and had not "cohabited as man and wife since that period of time." See id. The trial court entered a default judgment in favor of Ms. Lanier, and Ms. Lanier received custody of the four children. See id. In November, 1977, the Tennessee Department of Human Services, as assignee of Ms. Lanier, filed suit against Mr. Taylor, seeking an order declaring Mr. Taylor to be the father of Terry and requiring Mr. Taylor to pay child support. See id. Mr. Taylor filed a motion to dismiss. See id. Relying upon the record in Ms. Lanier's divorce suit, the trial court granted the motion to dismiss, finding that Terry was the child of the marriage of Ms. Lanier and Mr. Lanier. See id. at 1-2. In affirming the trial court's decision, the court of appeals held that "judicial estoppel applies to bar [Ms. Lanier] from claiming that Terry is the child of any father other than [Mr. Lanier]. Id. at 2. The court of appeals noted that Ms. Lanier argued that the divorce complaint stated that the parties had been separated and had not cohabited for twenty months prior to the birth of Terry. See id. The court of appeals found that this statement in the divorce complaint did not "negate the effect, for purposes of judicial estoppel, of Ms. Lanier's statement that Terry Lanier was 'born of the marriage' and her prayer that [Mr. Lanier] pay child support for Terry Lanier." Id.

In the case at bar, Mr. Lockhart stated in his complaint for divorce that there were two children born of the marriage, Amber and Zachary. Ms. Lockhart never filed an answer to the complaint for divorce. Ms. Lockhart stated in the marital dissolution agreement that the parties had two minor children, Amber and Zachary. Ms. Lockhart argues, however, that she was emotionally blackmailed into signing the marital dissolution agreement. From our review of the record, we find this argument to be without merit and agree with the trial court's finding that Ms. Lockhart was capable of obtaining counsel and challenging the marital dissolution agreement. Once Ms. Lockhart obtained counsel, she filed a petition to modify the final decree of divorce as to custody of the children. In the petition, Ms. Lockhart again referred to the children as "the minor children of Petitioner and Respondent, namely, Amber . . . and Zachary." Ms. Lockhart never raised the issue of the paternity of Amber until the hearing on the petition to modify the final decree of divorce. At that point, Ms. Lockhart sought to contradict her earlier statement in the marital dissolution agreement that the parties had two minor children. Based on the definition of judicial estoppel and the cases outlined above, we find that the doctrine of judicial estoppel is applicable to the case at bar. Due to her statement in the marital dissolution agreement that the parties had two minor children, Amber and Zachary, Ms. Lockhart was judicially estopped to deny the truth of that statement in the later proceeding on the petition to modify the final decree of divorce. Ms. Lockhart argues in her appellate brief that Mr. Lockhart cannot rely upon judicial estoppel because he came into the trial court with "unclean hands." We find that the doctrine of unclean hands is wholly inapplicable to the case at bar. Accordingly, we affirm the trial court's decision finding that Ms. Lockhart was judicially estopped from testifying that Mr. Lockhart was not the father of Amber.

The second issue presented for our review is whether, in the event Ms. Lockhart was not barred by judicial estoppel to raise the issue of the paternity of Amber, Ms. Lockhart posed a threat of substantial harm to the children. Ms. Lockhart argues in her appellate brief that, in a suit for child custody between a natural parent and a third party, the natural parent should retain custody absent proof of a threat of substantial harm to the child. We agree. Because we find that Ms. Lockhart was barred by judicial estoppel to raise the issue of the paternity of Amber, however, we do not consider Mr. Lockhart a "third party" when resolving the decision as to custody of the children. Rather, Mr. Lockhart is considered the "natural parent" of the children. Accordingly, we decline to address the issue whether Ms. Lockhart posed a threat of substantial harm to the children.

The third issue presented for our review is whether the trial court erred by finding that there was not a material change in circumstances sufficient to modify the final decree of divorce with respect to child custody. In child custody cases, the law is well established that when a decree awarding custody of children has been entered, "that decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way to make the welfare of the children require a change in custody." Long v. Long, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972) (citing Hicks v. Hicks, 176 S.W.2d 371 (Tenn. Ct. App. 1943)). In other words, once the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. See, e.g., Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

The party seeking a change in custody has the initial burden of showing a material change in circumstances which affects the welfare of the child. See Harris v. Harris, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). A "material change in circumstances" justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. See Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996) (citing Dalton v. Dalton, 858 S.W.2d 324 (Tenn. Ct. App. 1993)). If the party seeking a change in custody satisfies the burden of proving a material change in circumstances, the trial court will then consider the petition to modify custody using a best interests standard. See Woolsey v. McPherson, No. 02A01-9706-JV-00125, 1998 WL 760950, at *2 (Tenn. Ct. App. Nov. 2, 1998).

The primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change in circumstances, this Court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. See Turner v. Turner, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988); Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993). In addition, the material change in circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. See McCain v. Grim, No. 01A01-9711-CH-00634, 1999 WL 820216 at *2 (Tenn. Ct. App. Oct. 15, 1999). The change must affect the child's well-being in a material way. See Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981). Finally, the removal of a child from the jurisdiction is not, in and of itself, a material change in circumstances sufficient to justify the modification of custody. See Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993).

In the case at bar, Ms. Lockhart's petition to modify the final decree of divorce as to child custody alleged that Mr. Lockhart could not properly care for the children because he traveled approximately ten to fourteen days per month in connection with his job. The petition alleged that Mr. Lockhart neglected the children by failing to bathe them on a daily basis and dressing them in the same clothing each day, by failing to assist Amber with her homework, and by failing to forward Zachary's immunization records to his day care center. The petition alleged that subsequent to the parties' divorce, Mr. Lockhart began regularly consuming alcohol and began "partying." The petition also alleged that Mr. Lockhart had been living with a bi-sexual woman which violated the parties' marital dissolution agreement enjoining the parties from exposing the children to unrelated overnight visitors of the opposite sex. Finally, Ms. Lockhart argues that her significant improvement in mental health combined with Mr. Lockhart's desire to relocate with the children to Alabama is a clear material change in circumstances sufficient to warrant a change of custody.

At the hearing, Zachary's pre-school teacher, Melissa Vanpelt ("Ms. Vanpelt"), testified that Zachary came to school clean and appropriately clothed. Ms. Vanpelt also stated that Mr. Lockhart was very involved with Zachary's well-being. Likewise, Amber's second grade teacher, Michelle Cooper ("Ms. Cooper"), testified that Amber came to school clean and appropriately clothed. Ms.

Cooper said that Amber was a good student and Mr. Lockhart was an involved parent with Amber's well-being.

Ms. Lockhart testified that she attempted suicide while she was pregnant with Amber and attempted suicide again in April, 1999 subsequent to filing the petition to modify custody. She stated that she was diagnosed with manic depression in 1998 and diagnosed as bipolar in February, 2000. Ms. Lockhart testified that she sees a psychiatrist for medication and a psychologist for therapy. Ms. Lockhart admitted that Mr. Schultz and she lived together before they got married. She stated that Mr. Schultz and she had a physical altercation in October, 1998 at which time the children were present in the home, and Mr. Schultz was arrested. She also admitted that Mr. Schultz and she had a prior physical altercation. Ms. Lockhart claimed that Mr. Schultz and she get along well and that Mr. Schultz and the children get along well.

When questioned what harm would come to the children by not changing custody from Mr. Lockhart, Ms. Lockhart testified, "Well, I don't know that necessarily harm would come to the children. I'm not – I'm not saying that – I just know that the children spend the majority of their time with Anaka Lockhart." Ms. Lockhart stated that Anaka was twenty-one years old and that she questioned Anaka's decision-making abilities. She also claimed that Anaka had been in a lesbian relationship. Ms. Lockhart testified that the only physical contact she had with Anaka was when her arm brushed against Anaka's arm. Ms. Lockhart said that Mr. Lockhart traveled an average of one week per month in connection with his prior job and usually left the children with the Peeks. She claimed that Mr. Lockhart had refused her visitation with the children at times. She admitted that Mr. Lockhart makes good decisions for the children. Ms. Lockhart testified that Amber is well adjusted and well cared for but that she has concerns about Zachary. Ms. Lockhart stated that the children love Mr. Lockhart.

Mr. Lockhart testified that subsequent to the divorce, his job required him to travel an average of one week per month. According to his testimony, Mr. Lockhart changed jobs and his present job does not require him to work nights or weekends. He admitted that he relied heavily on the Peeks to help take care of the children after the divorce but that after he married Anaka, she began caring for the children. Mr. Lockhart also admitted that Anaka stayed overnight at his house before they got married. He claimed that Anaka and he have a good marriage. Mr. Lockhart testified that Anaka and he buy the children clothes, prepare the meals, buy groceries, help the children with homework, and take the children to the doctor. He stated that he had not deprived Ms. Lockhart of visitation with the children and occasionally provides Ms. Lockhart with extra visitation. Mr. Lockhart admitted that he once threw a knife across the room but that no one else was in the home at the time except for the children who were asleep. He testified that he does not spank either of the children but that he used to spank Zachary. Mr. Lockhart claimed that he does not drink alcohol regularly. Mr. Lockhart testified that Ms. Lockhart had exposed the children to policemen and confrontations with Mr. Schultz. He also testified that Ms. Lockhart does not have a stable home life. Mr. Lockhart said that the children have a strong bond with Ms. Lockhart, and she is a good mother.

Mr. Schultz testified that Ms. Lockhart and he had a few physical altercations in the past in which Ms. Lockhart was the aggressor. He stated that the children are well-adjusted. Mr. Schultz claimed that he has a good relationship with the children. He testified that Ms. Lockhart stays on her medication and has made a great improvement with her mental health. Mr. Schultz said that they have a stable home environment.

Mr. Lockhart's mother, Mildred Lockhart ("Mildred"), testified that Mr. Lockhart is a good father. She stated that the children do not appear to be improperly cared for in any way. Mildred also said that Anaka takes good care of the children and is a fit custodian.

Anaka Lockhart testified that she has a good relationship with the children. Anaka admitted that she began living with Mr. Lockhart in December, 1998 and that she took a parenting class in 1999. She stated that she spanked Zachary once when he threw a temper tantrum and that she uses time outs to discipline. Anaka claimed that the children are bathed daily and that Mr. Lockhart and she assist the children with their baths and their homework. She testified that she takes the children to the doctor, prepares their meals, purchases their clothing, and picks them up from school. Anaka claimed that Mr. Lockhart only drinks alcohol on special occasions but never in front of the children. She also stated that she drinks alcohol occasionally but never gets drunk. Anaka admitted that she had a lesbian involvement on one occasion when she was eighteen years old but that she is a heterosexual. Anaka testified that in May, 2000, Ms. Lockhart shoved her on the chest when she was late bringing the children home.

Mr. Peek stated that his opinion as to Mr. Lockhart's parenting abilities had changed since the divorce. He testified as to an incident that occurred after the divorce in which Mr. Lockhart refused to let the Peeks into his house to check on the children. Mr. Peek said that

> I persisted, I would not leave until I saw the kids. Because I felt
> there was something wrong. So eventually, he tossed something,
> and slammed the door open so hard that it knocked a hole in the
> wall with the doorknob. And then he left. He went and got in his
> truck and he left. My wife and I entered the house and the kids
> were asleep. I checked the room next to the living room and found
> a butcher knife laying on the floor and it was my feeling at that
> time that's what he tossed when he slammed the door open. My
> wife and I took the kids and put them in our car. We were there
> when he came back in his truck. He drove his truck into the yard.
> He drove over the trees they had planted in the yard. And then we
> went ahead and left.

Mr. Peek claimed that Mr. Lockhart refused to allow the Peeks to see the children after this incident. He stated that they see the children when Ms. Lockhart has visitation with the children. Mr. Peek claimed that the children's demeanors have changed in that Amber is demure and Zachary has tantrums. He testified that Ms. Lockhart's behavior has improved since the divorce. Mr. Peek

claimed that Ms. Lockhart is loving and nurturing and that he has no reservations about Ms. Lockhart being awarded custody of the children.

Mrs. Peek testified that her opinion as to Mr. Lockhart's parenting abilities had changed since the divorce. She claimed that after the divorce, the Peeks cared for the children ninety-five percent of the time until Mr. Lockhart married Anaka. Mrs. Peek stated that Ms. Lockhart frequently asked Mr. Lockhart for extra visitation with the children but that he refused. She claimed that Amber had become quieter and unhappy and that Zachary went into rages. Mrs. Peek testified that she had no reservations about Ms. Lockhart being awarded custody of the children.

After considering the arguments of counsel, the testimony of the parties and their respective witnesses, the exhibits introduced at the hearing, and the entire record, the trial court stated that "[f]or the mother to change custody, she's got to prove that there's a substantial risk of harm or very least that there's a material change in circumstance, and this has to be on the part of the father. And I don't see that there has been any proof that would – that there has been found that the evidence did not support a finding that there had been a material change in circumstances which authorized the trial court to change custody." We agree. From our review of the record, taking into account the trial court's determinations as to witness credibility, we find no material change in circumstances regarding the circumstances of Amber and Zachary. A material change in circumstances regarding the circumstances of Ms. Lockhart does not warrant a change of custody under the law in Tennessee. Additionally, Mr. Lockhart's plan to relocate with the children to Alabama, in and of itself, does not constitute a material change in circumstances. Accordingly, we affirm the trial court's decision denying the petition to modify the final decree of divorce as to custody of the children.

The fourth issue presented for our review is whether Mr. Lockhart should be awarded his reasonable attorney's fees and expenses incurred in defending this appeal. Mr. Lockhart requests this Court to award his attorney's fees and expenses necessitated by this appeal. Section 36-5-103(c) of the Tennessee Code permits a person to whom custody is awarded to recover his or her attorney's fees "incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing." TENN. CODE ANN. § 36-5-103(c) (Supp. 2000). The decision to award attorney's fees is within the sound discretion of the court. See id. We respectfully deny Mr. Lockhart's request for attorney's fees and expenses on appeal.

**IV. Conclusion**

For the foregoing reasons, the decision of the trial court is affirmed.  Costs of this appeal are taxed against the Appellant, Vicky Lynn Lockhart, and her surety, for which execution may issue if necessary.


                                                 _____

                                               ALAN E. HIGHERS, JUDGE