**IN THE COURT OF APPEALS OF IOWA**

No. 14-0078
Filed April 16, 2014

**IN THE INTEREST OF I.S., N.S., and T.M.,**
    **Minor Children,**

**J.S., Father,**
        Appellant,

**T.M., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to three children. **AFFIRMED IN PART AND REVERSED IN PART ON BOTH APPEALS.**

Maury J. Noonan of Pappajohn, Shriver, Eide & Nielsen, P.C., Mason City, for appellant-father.

Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Nichole M. Benes, Assistant County Attorney, for appellee.

Mark Young, Mason City, guardian ad litem for minor children.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

The juvenile court terminated the parental rights of Tasha and Joshua to I.S. and T.M. under Iowa Code section 232.116(1)(f) (2013)[1] and to N.S. under section 232.116(1)(h).[2]  The court pointed to the children's anxiety, anger, and frustration and concluded only through cutting ties with their parents could they stop worrying about being safe and start focusing on just being children.  On appeal, the parents argue the State failed to satisfy the statutory grounds for termination.  The parents also assert the State did not make reasonable efforts to reunify the family.  Finally, they contend termination was not in the best interests of the children.

In our de novo review, we find the services provided this family by the Department of Human Services (DHS) met the test for reasonable efforts.  Even after receiving services, the parents are not presently able to resume care of their children.  Clear and convincing proof supports termination of parental rights with respect to I.S. and N.S., and termination is in the children's best interests.  Accordingly, we affirm the order terminating parental rights to those two children.

---

[1] The court may terminate the rights of a parent to a child if: (1) the child is four years of age or older, (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96, (3) the child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days, and (4) there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102. Iowa Code § 232.116(1)(f).

[2] The court may terminate the rights of a parent to a child if: (1) the child is three years old or younger, (2) the child has been adjudicated a CINA under section 232.96, (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months, and (4) "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."  Iowa Code § 232.116(1)(h).

As for T.M., because he is not the biological or legal child of either Tasha or Joshua, we find the juvenile court erred in including T.M. in the termination order. Accordingly, we reverse the order as to that child.

## I.     Background Facts and Proceedings

I.S. (born in 2007), N.S. (born in 2010), and T.M. (born in 2009)[3] came to the attention of the Department of Human Services (DHS) in 2012 based on reports the young children were left outside without supervision, as well as an incident where Joshua threatened Tasha and her new paramour with a baseball bat in the presence of T.M.  Both Tasha and Joshua were in foster care themselves as children because they were abused and exhibited troubling behaviors.  As adults they continue to struggle with mental health challenges.

On November 19, 2012, I.S., N.S., and T.M. were adjudicated as children in need of assistance (CINA).  At home with the parents, the children suffered anxiety issues concerning their safety; they would fight and throw tantrums.  On November 26, 2012, the children were removed from the home due to concerns about the mental health of the parents, possible domestic abuse, and the overall safety of the children.  After persistent coaching on better parenting practices from the family safety, risk, and permanency (FSRP) provider, Tasha and Joshua—who lived in separate homes—were able to move toward semi-supervised and then unsupervised visitation with the children.

---

[3] T.M. is the biological child of Tasha's sister Tara.  Tara voluntarily placed her son in the care of his maternal aunt and uncle, Tasha and Joshua, when he was just two days old. We will discuss T.M.'s status later in this opinion.

But in March of 2013, the DHS moved the family back to semi-supervised visits because the workers believed the parents had exercised poor judgment. For instance, the parents allowed Tasha's paramour to participate in visits without DHS approval, and Tasha spanked T.M. in the locker room at the YMCA because he had been banging the lockers shut.

The State filed petitions to terminate parental rights on November 19, 2013. The juvenile court held a hearing on December 16 and 17, 2013. The district court issued an order terminating the parental rights of Joshua and Tasha as to their biological children, I.S. and N.S., on January 3, 2014. The order also purported to terminate their rights as the "pseudo-mother" and "pseudo-father" of T.M. The court found clear and convincing evidence the children could not be returned home at the time of the hearing under Iowa Code section 232.116(1)(f) and (h). Both Joshua and Tasha now appeal.

## II.    Standard of Review

The scope of review in termination cases is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). The primary concern in a termination proceeding is the best interests of the child. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). "We are not bound by the juvenile court's findings of fact,

but we do give them weight, especially in assessing the credibility of witnesses." *D.W.*, 791 N.W.2d at 706.

III.   **Analysis**

A.   **Parental rights to T.M.**

Both parents challenge the termination of their rights with respect to T.M. We agree termination was improper and should be reversed.  But we do so because neither Tasha nor Joshua fits the definition of "parent" in the juvenile justice chapter.  "Parent" means "a biological or adoptive mother or father of a child but does not include a mother or father whose parental rights have been terminated."   Iowa Code § 232.2(39).   "Termination of the parent-child relationship" is defined as "the divestment by the court of the parent's and child's privileges, duties, and powers with respect to each other."  *Id.* § 232.2(57).

T.M. is the biological child of Tara, Tasha's sister.  In its January 3, 2014, order, the district court acknowledged "[n]o legal paperwork was ever filed or prepared to transfer parental rights to Tasha and Joshua."  But the court overlooked the lack of formalities, observing "the reality is that the family has lived as though [T.M.] was adopted into it."  Living with a family "as though" adopted into it, does not replace the procedures outlined in Iowa Code chapter 600.  *See In re Adoption of M.M.B.*, 376 N.W.2d 900, 902 (Iowa 1985) ("Adoption is a creature of statute and was not known at common law.").  The care-taking role assumed by Tasha and Joshua is not a parent-child relationship to which the termination procedures apply.   "Our courts do not recognize legal rights or obligations between a child and a person who is not the legal parent of the

child . . . ." *In re Marriage of Bethards*, 526 N.W.2d 871, 875 (Iowa Ct. App. 1994) (Cady, J., dissenting). If no legal rights exist, they cannot be terminated.

Our reversal of the termination of the "parental" relationship between T.M. and his aunt and uncle does not disrupt T.M.'s current status in any way.[4] He remains adjudicated CINA, in family foster care, and eligible for adoption.

**B.      Parental Rights to I.S. and N.S.**

**1.      Statutory basis for terminating mother's rights**

Sections 232.116(1)(f) and (h) require proof the children cannot be returned to the parents "at the present time" as provided in section 232.102. "At the present time" means the time of the termination hearing. Section 232.102(9) allows a child to be returned home only if evidence shows the child will not suffer harm in the manner specified in section 232.2(6). The harms in section 232.2(6) include a likelihood of abuse or neglect, a failure to exercise a reasonable degree of care in supervision, or inadequate care due to mental capacity or condition.

The juvenile court found:

> To return the children to their home at this time would subject the children to the following adjudicatory harms: mental health problems, continuing anger management problems, parenting skills deficiencies, lack of appropriate boundaries, and synthetic marijuana use by both parents within the last 3 months.

In a well-written brief by her attorney, Tasha challenges these findings on appeal. She points out that her parenting abilities have "progressed at a more

---

[4] On January 24, 2014, the juvenile court held a hearing on the State's petition to terminate the parental rights of T.M.'s biological mother, Tara, and his unknown father. On February 4, 2014, the court terminated T.M.'s relationship with Tara and any unknown father under Iowa Code section 232.116(1)(b). That order is not being appealed here.

rapid pace than usual." She claims the DHS has overblown some of the perceived parenting deficiencies, for instance, faulting the parents for giving their children candy and toy handcuffs during visitations. Finally, she argues the record lacked clear and convincing evidence that she was abusing illegal substances.

We acknowledge Tasha has made some progress during the case, but we agree with the juvenile court that she continues to engage in the kind of poor decision-making that makes reunification too great a risk for the children. At the time of the termination hearing, Tasha was living with a paramour; she admitted their relationship had been punctuated with domestic violence. At one point, a break up in that relationship prompted Tasha to threaten suicide. Yet she did not see the risk of violence in the home as impeding the return of her children. Tasha's failure to recognize the potential harm from exposure to such a volatile situation is evidence the children cannot be returned to her custody. *See In re C.C. and S.N.*, 538 N.W.2d 664, 667 (Iowa Ct. App. 1995).

The juvenile court was also rightly concerned about Tasha waiting for several months after the CINA adjudication to seek mental health treatment. Tasha has been diagnosed with borderline personality disorder, post traumatic stress disorder, and borderline intellectual functioning. When she did speak to a therapist, she mischaracterized events and blamed the removal for many of the children's problems. On several occasions she would verbally attack DHS employees for the family's situation. Despite receiving counseling and other

services, Tasha continued to struggle with impulse control and reverted to habitually angry responses.

Tasha has exercised poor judgment when interacting with the children. She and Joshua advised the children not to report certain incidents that occurred during visits. She also told the children they had "two sets of rules"—one with their natural parents and one with the foster family. The juvenile court credited testimony from the FSRP worker that Tasha had, on occasion, slurred her speech, seeming to be under the influence of an intoxicant, during telephone conversations with her children: "The kids didn't know what to do because Mommy couldn't complete sentences." Tasha also appeared to be lethargic and unable to walk straight during an in-person visitation. Joshua told the worker he suspected Tasha was using synthetic marijuana, as they had done so together before the DHS opened its case. We defer to the district court's fact finding on this point.

The FSRP worker testified Tasha worked hard to "get a handle on her anger" but the worker believed a threat continued to exist that Tasha would lash out at the children. The guardian ad litem noted in his report "the parents have acted in ways that were concerning for the children's safety." Our review of the record compels us to reach the same conclusion as case workers, the guardian ad litem (GAL), and the juvenile court. *See In re D.W.*, 791 N.W.2d at 707 (noting "service providers and guardian ad litem were unable to recommend reunification"). Given Tasha's history of mental instability and continued poor

judgment, we agree she cannot presently offer a stable home for the children. *See In re K.F.*, 437 N.W.2d 559, 563 (Iowa 1989).

### 2.    Statutory basis for terminating father's rights

The father also challenges the juvenile court's finding the children could not be presently returned to his care. He argues at the time of the termination trial on December 16, 2013, "he had done all that was requested of him by the State." Joshua emphasizes he "was employed, receiving mental health services, and living in a safe and appropriate home for the children."

We recognize Joshua has made great strides in his parenting abilities. The GAL said, "Josh clearly loves his children and wants what is best for them." But neither the GAL nor the case workers felt comfortable recommending the children be returned to his custody at the time of the termination hearing.

Like Tasha, Joshua has a history of mental health problems. He has been diagnosed with Tourette syndrome, intermittent explosive disorder, and borderline intellectual functioning. His IQ test results were 74, which equates to the mental age of someone slightly under twelve. While a parent's intellectual impairment is not sufficient on its own to justify termination, it may be considered if it affects the children's well being. *In re A.M.*, __ N.W.2d __, 2014 WL 685401 (Iowa 2014) *quoting In re D.W.*, 791 N.W.2d at 708. Joshua struggles with complex problem solving and thinking things through. For example, he quit his job with CDI, a commercial painting company in Forest City (a steady, well-paid position close to his family) to go "flip" repossessed HUD (department of housing and urban development) homes, despite advice from DHS workers that the new

venture would not live up to its promised return. Only after more than four months without any income did Joshua realize his miscalculation. *See In re P.L.,* 778 N.W.2d 33, 41 (Iowa 2010) (emphasizing that the father's "poor decision making makes him unable to provide a safe and nurturing home for his child").

Joshua also struggles with anger, aggression, and poor judgment. The children's removal stemmed from Joshua's threatening behavior toward Tasha and her paramour. DHS workers testified he has yelled and acted aggressively toward them in front of the children. Joshua also demonstrated his inability to handle his frustration appropriately when he jumped out of a moving car when fighting with Tasha on the way to a visitation with the children. The juvenile court expressed concern the father did not seek anger management counseling until June 2013, seven months after the children's removal. The court also accepted the testimony of the DHS worker who believed that Joshua was "under the influence of something" at a visit in October 2013.

The FSRP worker testified Joshua needed constant support to parent his children effectively and could not provide a safe environment on his own at the time of the termination hearing. The juvenile court adopted that view, and we agree the children could not be safely returned to the custody of their father. Despite Joshua's recent efforts to achieve stability, his parental rights to I.S. and N.S. should be terminated.

### 3. Best interests of I.S. and N.S.

Both parents argue termination does not serve the children's best interests. They claim ending the legal relationship would be detrimental because

of their strong bond with the children. *See* Iowa Code § 232.116(3)(c) (allowing court to forego termination if there is "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). We disagree.

The juvenile court found the parent-child relationships to be "strained." I.S. suffers from extreme anxiety that is often exacerbated by seeing Tasha and Joshua. Reports from his teachers indicate his behavior worsens after the visits. His anxiety even causes the child to soil himself during and after the visits with his parents. I.S. has said his parents "hit me," "abandon me," and "yell at me." He often asks the foster family to keep him safe.

Tasha and Joshua call the children regularly at their foster home, but the children are not eager to talk with them. The foster parents often have to convince the children to come to the phone. We share the juvenile court's concerns about the parents' mental health and stability. As noted, the case workers believed the parents both fairly recently interacted with their children while under the influence.

"Section 232.116(2) requires us to 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *P.L.*, 778 N.W.2d at 40. The children's GAL stated it best: "Based on the length of time the children have been out of parental care, and the high needs of the children for discipline, structure, and permanency, I would respectfully ask the court to grant the Petition for Termination."

The children have been in the same foster care placement for the last fifteen months. The children have bonded with the foster parents. The foster parents offer the children a safe and loving home, provide for their needs, and wish to adopt them. *See* Iowa Code § 232.116(2)(b)(1) (in determining best interests, the court may consider a child's integration into the foster family "to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family"). The children deserve and need the stability and permanency they offer.

### 4. Reasonable efforts

Both parents mention the "reasonable efforts" requirement in their petitions on appeal. The mother specifically argues the DHS failed to provide her with Parent-Child Interactive Therapy after she requested that service. The father contends he should have been allowed overnight visits and a trial home placement with the children.

The juvenile code requires the DHS to make "every reasonable effort to return the child to child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). What constitutes reasonable services varies depending on the requirements of the individual case. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). When a parent fails to identify a deficiency in services or to ask for additional services, he or she may be precluded from later challenging the adequacy of the services. *Id.* at 147 n. 4.

When we view the record as a whole, we find the services offered through the DHS satisfied the requirement for reasonable efforts under the circumstances of this case.

Since the CINA proceedings in November 2012, the DHS has offered this family the following programs: FSRP services, behavior health intervention services, individual therapy, anger management guidance, drug testing, psychological testing, medication management, community services, family foster care, visitation safety planning, child protective service assessment, family team meetings, transportation assistance, parent partners, substance abuse assessment and treatment, and housing assistance. Both Tasha and Joshua have benefited from these services throughout the course of these proceedings.

The parents did request more visitations. But the DHS denied the request because of the parents' inability to follow the rules currently set out for visitation—specifically: showing up late, returning late, and allowing unsafe activity to occur. As for Tasha's request for specific interactive therapy, we cannot find such a request for additional services in the record. In fact, in October 2013, Tasha threatened to walk away from services all together.

For all of these reasons, we conclude the State proved by clear and convincing evidence that the parental rights of Tasha and Joshua should be terminated as to their natural children, I.S. and N.S. The record shows termination is in the children's best interests. We reverse the termination order as to T.M. for the reasons previously stated.

**AFFIRMED IN PART AND REVERSED IN PART ON BOTH APPEALS.**